## FREDERICK W. GRASSMEYER v. LEANDER BEESON.

Having heretofore determined (in same suit reported in 13 Tex. R. 524,) that the (District) Court had jurisdiction to render the decree (in 1841, in a suit for specific performance of a contract to convey half a league of land, and for partition, where the defendant was absent, and service was made by publication, and personally upon a curator appointed by the Probate Court, and the party was also represented by an attorney *ad litem,* appointed by the District Court,) it is perfectly clear that it is conclusive of the questions adjudicated therein, and that they are not now open to examination or discussion, unless the decree was obtained by fraud.

However obtained, it will not be questioned that it was competent for the party whose interest was affected by it, to acquiesce in and abide by the decree, if he saw proper.

If he is content, as it seems he has been for the space of fifteen years,—and the evidence leaves little room to doubt that he must have been aware of it,—it would seem that a stranger, one who was not a party or privy, and who does not claim under the party, or pretend to have had any right or interest to be affected by the judgment, cannot impeach it.

But if he can, there was no evidence of fraud, which required the Court to leave any such question to the jury.

There must be some proof, to warrant the setting aside of judgments, and the annulling of titles, on the ground of fraud. It must not be on mere surmise or suspicion, nor upon evidence which does not necessarily or naturally or reasonably tend to that conclusion.

The Statute (of February 5th, 1840, to enable part owners of land to obtain partition thereof and for other purposes, Hart. Dig. Art. 2617 *et seq.,*) prescribes a procedure which parties may adopt if they see proper; but it is not obligatory. Our Courts, possessing all the powers of Courts of Chancery, may proceed to administer relief upon the principles of equity, as fully and completely as a Court of Chancery in England could do, without the aid of the Statute.

It is usual to provide in the decree (of partition) for the Commissioners to report; and upon confirmation of their report, to direct conveyances to be made. But it is competent for the Court to direct the manner of making the partition, and to decree the making of the conveyances, without the necessity of a report and decree of confirmation; and if the decree should be errone-

ous, none but a party or privy, or some one whose interest is in some way affected by it, could complain or take advantage of the error.

But if the partition had been invalid, still the decree (for title to half the land and for partition,) without partition, vested in the plaintiff an undivided interest in the land, and constituted him a tenant in common with the original grantee ; and that was sufficient title to enable him to maintain his action against this defendant.

We have heretofore decided that one tenant in common may maintain trespass to try title against a stranger.

It is scarcely necessary to say that the removal of the grantee (of a colonial headright) from this to another of the States of the Mexican Confederacy in 1833, was not an abandonment of the country, within the inhibition of the 30th Article of the Colonization Law of the 24th of March, 1825.

Appeal from Fayette.   Tried below before the Hon. James H. Bell.

Action of trespass to try title to a half league of land, by appellant against appellee, commenced May 20th, 1852, in Colorado county.  The land in controversy was the upper half of a league which was granted to Samuel Kennelly, as a colonist of Stephen F. Austin's colony, on the 28th day of April, 1831.   On the 5th of August, 1833, Kennelly gave the plaintiff a bond to make him a title to the one undivided half of the said league, when the laws of the country would permit. On the 24th of October, 1840, Grassmeyer instituted suit on the bond for title and partition, in the District Court of Colorado county.   The petition in said suit for title and partition, alleged that Kennelly was "absent, in parts unknown," and prayed service on Frederick Scranton, as curator of his estate. At November Term, 1840, Scranton answered that he was ignorant of the matters alleged in the petition, and demanded proof.   It was then ordered that publication be made in the Austin City Gazette for six weeks, requiring said Kennelly to appear at the next Term, &c.   Publication was accordingly made.   At next Term, A. M. Lewis was appointed attorney *ad litem* for Kennelly, and excepted on the ground that the law required personal service on the defendant.   The excep-

tion was overruled, and a judgment was rendered for the plaintiff, April 26th, 1841, for title and partition. Title for the upper half made by the curator accordingly.

This suit was tried at the Spring Term, in 1854, and the Court having instructed the jury that the decree for title in the case of Grassmeyer v. Kennelly was a nullity, the defendant had judgment ; which judgment was reversed on appeal. The report of the case will be found in 13th Tex. R. 524.

The cause being remanded, the venue was changed to Fayette county, then in the second Judicial District, on the ground that the then presiding Judge of the first District had been of counsel for the defendant.

March 26th, 1856, defendant filed an amended answer, in which he claimed that the land had become vacant by Kennelly's abandonment of the country in 1833 ; allegation that said Kennelly abandoned the State of Coahuila and Texas, at that time, and went to the city of Matamoras, in the State of Tamaulipas, and has resided there ever since, and in the Revolution assisted the enemy ; alleging title in himself to three hundred and twenty acres, by virtue of the location of a valid land certificate for that amount, which he described.

November 9th, 1856, defendant filed another amendment in which he charged that the decree of title and partition in the suit of Grassmeyer v. Kennelly was fraudulent and void, stating specifications of fraud, at great length. Exception to this last amendment overruled.

The evidence was as follows : Grant to Kennelly as a colonist, April 28th, 1831. Decree of the District Court of Colorado county, April 28th, 1841, as follows : In this case Frederick Scranton having been cited to appear and answer the petition of the plaintiff in behalf of Samuel Kennelly, absentee, and having filed an answer at the last November Term of this Court, wherein he says that he knows nothing of the allegations made by the plaintiff in his petition and therefore requires him to make proof of them as alleged. Whereupon at the

said Term of the Court, it was ordered that publication be made in the Austin City Gazette for six weeks, requiring the said Kennelly to appear at the next Term thereof to defend the suit, so pending against him ; and publication having been made in the said Austin City Gazette for six weeks citing him to appear, as aforesaid, at the present Term and defend as aforesaid, and the case being called, and the plaintiff appearing by attorney, and neither the said Kennelly nor his curator, Scranton, appearing to defend the suit, Asa M. Lewis, an attorney and counsellor at law, previously appointed by the Court to defend the rights of said absentee, appeared on the part of the defendant. Whereupon the case, by consent of both parties, being submitted to the Court, and proof of the allegations in plaintiff's petition being made to the satisfaction of the Court, it was, by reason of the law and the facts, ordered, adjudged and decreed, that the title and right of one undivided half of the league of land, granted to said Samuel Kennelly by the Mexican Government, and situate on the west side of the Colorado river, be vested in the said Frederick W. Grassmeyer, to have and to hold the same to himself, his heirs and assigns. And it is further ordered by the Court, that the said Frederick Scranton, curator of said Kennelly, do make to the said Grassmeyer a full and complete conveyance of all the right and title of said Kennelly to one undivided half of the aforesaid league of land. And it is yet further ordered that a partition be made of the said league of land between the said Grassmeyer and Kennelly, so that the shares allotted to each be equal in quantity, so far as may be. And in order to carry fully into effect this decree, it is ordered, with assent of both parties to this suit, that Joseph W. McClung, Abel Beeson and John Toliver be, and they are hereby appointed Commissioners to make, in conjunction with the Sheriff, the partition of said league of land between the said Grassmeyer and Kennelly, according to the intention of this decree. Also the Clerk of this Court is ordered to issue a writ of par-

tition to the said Commissioners and Sheriff, requiring them to divide said tract of land as herein before related, and also due return to make of the manner in which they shall have effected such partition. Furthermore the said Scranton, as curator of Kennelly, is hereby ordered and required to make to the said Grassmeyer a complete transfer and conveyance of all the right, title and interest of the said Kennelly in and to the portion of said league of land, which, by the above named Commissioners and Sheriff, shall be allotted to the said Grassmeyer, as shall appear by the return made upon the writ, of partition, setting forth the manner in which the same shall have been executed ; and in case, upon the return of said writ of partition executed, said Scranton shall fail to make a conveyance to said Grassmeyer of the portion of said league allotted to him by said Sheriff and Commissioners, then it shall be the duty of the District Clerk, and he is hereby required to make to the said Grassmeyer a complete and perfect conveyance of all the right and title of the said Kennelly in and to the portion of said league of land, which shall be designated and allotted as aforesaid.

Commission ; report of Commissioners, allotting the upper half of the league to Grassmeyer and the lower half to Kennelly ; dated June 30th, 1841. Deed from Scanton accordingly, dated August 4th, 1841. Recorded in office of Clerk of County Court same day.

A witness for plaintiff testified that the half league of land was known as Grassmeyer's since 1848, and notoriously called Grassmeyer's land; that he saw Samuel Kennelly in 1852 or 1853 at his house in the town of Columbus, Texas ; witness did not know him before that time.

Defendant then proved a location of three hundred and twenty acres of the land by him as assignee of Kidder Walker in 1851 ; proved that Kennelly removed from Texas to the State of Tamaulipas in 1833 and had remained there ever since; then the defendant gave in evidence the original peti-

tion in the suit of Grassmeyer v. Scranton, curator of Samuel Kennelly ; it was signed by Willard Wadham, as attorney for plaintiff; also original answer in said cause, signed F. Scranton, Curator of Samuel Kennelly; also the original receipt, signed F. Scranton, Curator, for ten dollars, required by the bond to be paid to Kennelly ; also the original bond from Kennelly to Grassmeyer ; then proved that the petition was in handwriting of said Wadham ; the answer also, except the signature, which was in handwriting of Scranton ; that the body of the receipt was also in Wadham's handwriting, the signature in Scranton's. Defendant then read a deposition of Scranton, from which it appeared that he could merely recollect that he had been used (to employ his own expression) as a party in the case of Grassmeyer v. Scranton, Curator of Kennelly.

Plaintiff then gave in evidence the original citation to Scranton, Curator of Kennelly ; proved the payment of government dues by him, plaintiff, on the whole league, January 30th, 1840 ; gave in evidence the exceptions filed by Lewis in the suit of Grassmeyer v. Scranton, Curator of Kennelly ; also transcript of proceedings in Probate Court of Colorado county, Willard Wadham, presiding. August 26th, 1839, showing the petition of Scranton to be appointed Curator of Samuel Kennelly, absentee ; the order making the appointment ; and the bond of Scranton in the sum of $7000 to Willard Wadham, Chief Justice, &c., for the faithful performance of his duties as Curator ; oath ; bond and oath dated October 29th, 1839 ; letters of Curatorship ; final account of Scranton, showing receipt of $10 from Grassmeyer ; payment of $12 costs of Probate Court ; charge of $1 10 commissions, balance due Curator, $3 10 ; and resignation of Curator. A witness for plaintiff testified that the papers in the District Clerk's office of Colorado county had, some time ago, been loosely kept, and he knew of a considerable number having been very much rat eaten.

The Court instructed the jury, without request, as follows :

That if the decree of the District Court of Colorado county in the case of Grassmeyer against Scranton, as Kennelly's Curator, and against Kennelly himself, was procured by fraud and combination between Grassmeyer and Scranton and their attorneys, then the decree of the Court was ineffectual to vest any right in Grassmeyer, or in any manner to conclude the rights of Kennelly.

If however there was no fraud or combination on the part of Grassmeyer, or between Grassmeyer and Scranton and their attorneys, then the decree of the District Court of Colorado county was valid and effectual to conclude the rights of the defendant Kennelly, which were adjudicated in that case.

If however there was no decree of the District Court of Colorado county, confirming the report of the Commissioners, who were appointed by that Court to make partition of the league of land between Grassmeyer and Kennelly, and vesting title in Grassmeyer to the land which he now sues for, or commanding the Curator, Scranton, to execute title to Grassmeyer, then the validity and fairness of the partition made by the Commissioners, were not matters adjudicated by the District Court of Colorado county. And the proceedings of the Court and the deed by the Curator, Scranton, did not vest title to the particular half league, where sued for, in Grassmeyer ; and if the title was not vested in Grassmeyer by the said proceedings of the District Court of Colorado county, then Grassmeyer cannot recover in this suit.

It is an inflexible rule of the law that a plaintiff, in an action of ejectment, must recover on the strength of his own title, and can take no benefit from the weakness of the title of his adversary.

The following instructions were asked by plaintiff, and refused :

1st. That the decree of the District Court of Colorado county in the case of F. W. Grassmeyer v. F. Scranton, Cura-

tor of Samuel Kennelly, is valid, and entitled Grassmeyer to one-half the league of land.

2d. That the writ of partition issued in said cause, the report of the Commissioners and Sheriff of Colorado county thereon, setting apart the upper half of the league, and the conveyance to Grassmeyer by Scranton, is a valid partition.

3d. That the fairness and validity of the decree of partition aforesaid, cannot be brought in question by any person but Samuel Kennelly and those who may claim under him.

4th. That the length of time since the rendition of the decree and making the partition is evidence of an acquiescence therein by said Kennelly and Grassmeyer, especially if they believe said Kennelly has been in Colorado county since the rendition of the decree and making the partition, and it has not been made to appear that he dissented to the said partition and decree.

5th. That the acquiescence in the decree and partition by said Kennelly and Grassmeyer from 1841, would validate any irregularity in the said decree and partition, which is apparent.

6th. That if there be any irregularity in the partition of the land, or if a confirmation of the report were proper, still the deed from Scranton to Grassmeyer was sufficient to make the partition complete and valid.

7th. That, though the laws authorizing the appointment of curators of absentees were all repealed before the decree was rendered, still Scranton retained such a vested interest, connected with this land and his trust, as Curator, that they were not determined by the repeal of these laws; and that he had authority to confirm any irregularity or incompletion there may be in the said partition, and that his deed to Grassmeyer had that effect and should now be so considered, if Samuel Kennelly acquiesced in the same.

8th. That the decree and partition by Commissioners and Sheriff of Colorado county, together with the deed from Scran-

ton to Grassmeyer operate to vest in Grassmeyer all the title of Kennelly in the land in controversy.

9th. That the plaintiff has shown a chain of title from the Government down to himself.

Verdict and judgment for defendant. Motion for new trial overruled, &c.

*W. G. Webb,* for appellant. I. The defendant should not have been allowed to attack the judgment in the suit of Grassmeyer v. Kennelly's Curator on the ground of fraud. (Love v. Belk, 1 Ired. Ch. R. 163 ; Steel v. Worthington, 2 Ham. R. 182 ; Harry v. Graham, 7 Dev. & Batt. 76 ; Cleveland v. Demming, 2 Verm. 534 ; Ayres v. Hewett, 1 App. 281 ; Barney v. Cutler, 4 Root, 489 ; Hauer's Appeal, 5 Watts. & Serg. 473 ; Hazlett v. Ford, 10 Watts, 101 ; White v. Albertson, 3 Dev. 241; Id. 257 ; Perryman v. The State, 8 Miss. 208 ; Obert v. Hammel, 3 Harr. 73 ; Bannister v. Higginson, 3 Shep. 73 ; 8 Mass. 536 ; 14 Id. 496 ; 4 Id. 282; McAllister v. Williams, 1 Tenn. R. 107 ; 2 Id. 334 ; Phelps v. Parks, 4 Verm. 488 ; Wellington v. Gale, 13 Mass. 483 ; Camberford v. Hall, 3 McCord, 345.)

II. There was no evidence of any fraud, to warrant the charge of the Court.

III. Kennelly acquiesced in the decree. (Evans v. Percival, 5 Pike, 424 ; Bustard v. Gates, 4 Dana, 429.)

IV. The Court erred in charging the jury, as to the effect of the decree in the suit of Grassmeyer v. Kennelly's Curator. (13 Tex. R. 525.)

*G. W. Smith,* also, for appellant, to the point that the approval by the District Court, of the report of the commissioners of partition, was not necessary to consummate the title, cited Greenl. R. 260 ; 4 Har. & J. 141 ; 3 Mass. 299 ; 8 Bar. C. R. 73 ; 1 Deane R. 560.

*J. H. Robson*, for appellee. I. It will not be pretended that the appellant could have recovered the land sued for, from the appellee, by deraigning his title through the bond upon which the suit of Grassmeyer v. Scranton, curator of Kennelly, was predicated ; the bond having been executed at a time when the alienation of the land was prohibited by law.

If then the bond would have been an insufficient muniment of title, what additional force or validity could it acquire by the rendition of a decree which was obtained by a fraudulent combination of the parties to that decree ?

In support of the position that the decree was not conclusive against the defendants, see the following authorities : (1 Hill's S. C. 299 ; 5 Penn. State R. 216 ; 3 Coke's R. 77, 94 ; 4 Wash. C. C. R. 715 ; 2 Met. R. 135 ; 6 Penn. State R. 276, 277 ; 19 Id. 125 ; 2 Stark. Ev. 339 ; 2 Black. Com. 286 ; 1 Johns. Ch. R. 405 ; 1 Vesey, 120 ; Story's Conf. L. 499 and note ; 4 U. S. Cond. R. 71.)

II. The pleadings having fairly presented the issue of fraud, and the jury whose peculiar province it was to determine the issue, having by their verdict decided it in the affirmative, this Court will not disturb the verdict.

III. There is another view of the case in which, it is submitted, the judgment of the District Court ought to be affirmed. When this Court decided on the former trial of this cause that in the absence of a law establishing a mode for bringing an absentee into Court, it was competent for the Court to adopt a rule on the subject, the question of fraud in obtaining the judgment and in making parties to the suit, was not raised by the pleadings, and this Court acted upon the presumption that everything had been fairly done, and that where there was a legal right there must be a remedy. It now appears from the evidence and from the verdict of the jury, that the only right which the plaintiff held in the suit of Grass-meyer v. Scranton, curator," &c., was an illegal bond for title, which, but for a fraudulent combination of the nominal parties to that suit, and the versatile genius of the attorney who rep-

resented both plaintiff and defendant at one and the same time, could not have been enforced in the judicial tribunals of the country. Under these circumstances will this Court, in the absence of a law to authorize the plaintiff in that suit to bring the defendant into Court by any of the modes which were adopted by him, make a law for his relief? We say not, but that this Court will hold that " a title acquired by covin is " indefinitely open to be disputed ; and even acts, as well judicial " as other, which of themselves are just and lawful, if infected " with fraud, are in judgment of law *vicious*, and unavailing, for " the maxim is, ' *quod alias bonum et justum est, si per fraudem* " *petatur, malum et injustum efficitur.*' All the partialities of " the law expire under its antipathy to fraud." (Roberts on Fraud't. Conveyances, p. 520.)

IV. Even if it were conceded that the decree in the case of " Grassmeyer v. Scranton, curator," is conclusive, it only vested a title in the plaintiff to the undivided half of the league, there having been no confirmation of the action of the Commissioners and Sheriff by the Court which appointed them to partition the land. (Hart. Dig. Art. 2617, *et seq.*)

V. The abandonment of the State of Coahuila and Texas was in contemplation of law an abandonment of the country. (See Decree No. 16. Laws C. and T. p. 15.)

The different Mexican States had different and distinct colonization laws for the government of their own colonists. The State of Tamaulipas had a colonization law which was as much the Supreme Law of that State, as was the colonization law of 1825 the Supreme Law of the State of Coahuila and Texas. The object of all these State Colonization Laws was the settlement, not of the Mexican Republic, but of the particular States in which these laws were passed. And the only reasonable presumption is, that the object of the law in imposing the penalty of forfeiture of their lands, was to induce the settlers to remain permanently domiciliated within the limits of the State.

WHEELER, J. The questions now presented, which were not determined upon the former appeal, (13 Tex. R. 524,) and which are deemed to require notice, arise upon the allegations of fraud, and the effect of the decree for specific performance and partition.

Having heretofore determined that the Court had jurisdiction to render the decree, it is perfectly clear that it is conclusive of the questions adjudicated therein, and that they are not now open to examination or discussion, unless the decree was obtained by fraud. (Shannon v. Taylor, 16 Tex. R. 413.) However obtained, it will not be questioned that it was competent for the party whose interest was affected by it, to acquiesce in and abide by the decree, if he saw proper. If he is content, as it seems he has been for the space of fifteen years,— and the evidence leaves little room to doubt that he must have been aware of it,—it would seem that a stranger, one who was not a party or privy, and who does not claim under the party, or pretend to have any right or interest to be affected by the judgment, cannot impeach it. But if he can, there was no evidence of fraud, which required the Court to leave any such question to the jury. If the plaintiff's attorney did draw up the answer of the curator, for him, that, in an action of this nature, which was only intended to perfect an equitable into a legal title and have partition, which the curator had no reason to suppose the absentee would have opposed if present, was no evidence of fraud. The curator was under no obligation or necessity to employ counsel and litigate the case, or to make opposition, further than to require the plaintiff to establish his right by proof. The answer he adopted had that effect; and that was sufficient; especially as the absentee was also represented by an attorney of the Court. There is no pretence that the latter colluded with the plaintiff to defraud the absentee, or that he was wanting in fidelity to the party he represented. There is as little ground to impute a fraudulent design to the curator. When it is considered that Kennelly

Grassmeyer v. Beeson.

has since been in the country and there is reason to believe he must have known of this judgment, and he has not complained of it, it cannot be deemed that the evidence affords ground for even a suspicion that it was obtained in fraud of his rights. If, after so great a lapse of time, and under circumstances like these, the judgments of the Courts and the titles and rights depending upon them, were liable to be set aside and annulled upon such evidence as this, there would be no security for titles or property. Instead of being protected by the certain and fixed principles of the law, they would be liable at all times to be defeated by the prejudice, whim or caprice of a jury, on some such fanciful and imperceptible ground as a suspicion of latent fraud, which was not susceptible of proof. There must be some proof to warrant the setting aside of judgments, and the annulling of titles on the ground of fraud. It must not be on mere surmise or suspicion, nor upon evidence which does not necessarily, or naturally and reasonably tend to that conclusion. (1 Story Eq. Sec. 190 ; 1 Hovenden on Frauds, 24.)

In respect to the effect of the decree, and the partition of the land in pursuance thereof, it unquestionably was valid and effectual to vest in the plaintiff the title to the part conveyed to him under and in obedience to the decree. The Court acted in the matter of decreeing a specific performance and partition, in virtue of its powers and jurisdiction as a Court of Equity ; and not by virtue of an authority conferred merely by the Statute. As a Court of Equity. it possessed full power and authority to decree partition and provide for carrying its decree into effect, by appointing Commissioners and directing a conveyance. (1 Story's Eq. Ch. 14, Sec. 656, *et seq.*) The Statute (Hart. Dig. Art. 2617, *et seq.*) was doubtless borrowed from the legislation of States, where, by reason of the inadequacy of the remedy afforded by the Common Law writ of partition, (for until the Statute of 31st Henry VIII, Ch. 1, and 32 Henry VIII, Ch. 32, no writ of partition lay at law for a joint

tenant or tenant in common) legislation was necessary to ena-
ble parties to obtain partition in a Court of law.  But the giv-
ing of the remedy by Statute in a Court of law has never been
deemed to take away, or in any degree to abridge the original
and inherent powers and jurisdiction of the Court of Chancery
in respect to the partitioning of estates.  The Statute pre-
scribes a procedure which parties may adopt if they see proper;
but it is not obligatory.  Our Courts, possessing the powers of
Courts of Chancery, may proceed to administer relief upon
the principles of equity, as fully and completely as a Court of
Chancery in England could do, without the aid of the Statute.
The foundation of the jurisdiction of equity is not in the
Statute, but in the judicial incompetency of the Courts of Com-
mon Law, to furnish a plain, complete and adequate remedy ;
and in complicated cases, the Statute would afford a very in-
adequate and incomplete remedy.  It is usual to provide in
the decree, for the Commissioners to report ; and upon confir-
mation of their report, to direct conveyances to be made.  But
it is competent for the Court to direct the manner of making
the partition, and to decree the making of the conveyances,
without the necessity of a report and decree of confirmation.
The Court may, in the first instance, direct conveyances to be
made in pursuance of the allotments of the Commissioners, if
that be deemed proper.  There can be no doubt that the pow-
ers of the Court are adequate for this purpose ; and if the
decree should be erroneous, none but a party or privy, or some
one whose interest is in some way affected by it, could com-
plain or take advantage of the error.  The decree cannot be
collaterally impeached by a stranger.  The decree and parti-
tion vested in the plaintiff the exclusive right and title in the
land set apart and conveyed to him under and in pusuance of
the decree ; upon which he was entitled to maintain his ac-
tion.

But if the partition had been invalid, still the decree, with-
out partition, vested in the plaintiff an undivided interest in

the land, and constituted him a tenant in common with the original grantee ; and that was a sufficient title to enable him to maintain his action against this defendant.    We have heretofore decided that one tenant in common may maintain trespass to try title against a stranger.    (Croft v. Rains, 10 Tex. R. 520.)

It is scarcely necessary to say that the removal of the grantee from this to another of the States of the Mexican Confederacy in 1833, was not an abandonment of the country, within the inhibition of the 30th Article of the Colonization Law of the 24th of March, 1825.

The plaintiff's was a good and valid title to the land for which he sued ; and there was nothing in the matters of defence, urged against it, to defeat his right to a recovery.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.