# COUNTY OF OXFORD.

———o———

## ALBERT JEWETT *versus* WILLIAM C. WHITNEY.

An attachment on mesne process of a right and equity of redemption is sufficient to sustain a levy upon the estate in fee, if at the time of the levy the incumbrance created by the mortgage is relieved.

A levy reserving an estate less than a fee of a part of the premises set off is void in relation to the particular tract from which the reservation is made.

A co-tenant in possession, may maintain trespass *quare clausum* against a stranger for an injury to the freehold.

Where an execution was extended upon a lot of land upon which was a grist mill and privilege, and the appraisers after describing said premises in their return, use the words "exclusive of the grist mill now standing on said premises," the levy cannot be upheld; and it matters not whether it was the intention of the appraisers to exclude the grist mill as personal estate, or to reserve the mill and land under the same for the debtor, as an estate in fee defeasible by the destruction of the mill; in either case the levy will be void.

Where the defendant co-operated with co-tenants of the plaintiff wrongfully, in tearing down an old mill and erecting a new one at large expense, the plaintiff can recover but nominal damages.

This action is trespass *quare clausum*, and comes on report of MAY, J., presiding at *Nisi Prius.*

Both parties claim title to the *locus in quo*, under Sumner Stone, who conveyed by deed of warranty September 12, 1836, to Philip Barrows, who subsequently conveyed to Thomas Kilbourn the immediate grantor of Jewett, the plaintiff.

The defendant claims by virtue of an attachment and levy against Sumner Stone, and his attachment was made May 9, 1836, perfected by levy in which the *locus in quo* is described

as the right to redeem one undivided half of said tract, with one undivided half of a water privilege sufficient for a grist mill, *exclusive of the grist mill now standing on said premises.*

The plaintiff for some time prior to July, 1834, had been in possession of the mill, which is the property in dispute, taking one half of the profits of the same, at which time the defendant took possession of plaintiff's part, and received his proportion of the earnings. The mill was soon torn down and rebuilt by defendant and his co-tenants, using so much of the old as was proper for the new mill. Whereupon this action is brought for expelling the plaintiff, tearing down the mill, converting the same, &c.

At the date of the attachment by defendant, on May 9th, 1836, the premises were under mortgage from Sumner Stone to Moses Young, who conveyed by quit claim to said Stone September 13th, 1836, upon which the plaintiff contended that the equity of redemption being attached, the premises could not be held in fee under it.

The second count in the writ is for breaking and entering another close, being a saw mill standing upon the same lot of land as the grist mill, and claimed by plaintiff under the same conveyance, and by defendant under the same levy.

*C. W. Walton*, counsel for plaintiff.

Both parties claim title from one Sumner Stone; the plaintiff, by *deed*; defendant, by a *levy.*

1. The defendant's levy, being after the debtor had conveyed, can only be effectual by virtue of the attachment on the writ. This cannot be, because the attachment was of the debtor's *right to redeem* only, and the levy was made upon the *fee.*

It may be said that the land was redeemed pending the attachment, and that the creditor thereby acquired the right to levy upon the fee. But we contend that the evidence in the case does not show a redemption.

2. The premises in controversy between these parties was not included in the levy. The tenth parcel described in the

appraisers' certificate is the only one referring to the property in dispute between the parties. And it is perfectly clear from the language used, that it was intended to exclude from the levy the grist mill building. Any other construction would be a perversion of the language used. For not only do the appraisers in describing this parcel of land speak of it as an undivided half of said tract, with one undivided half of a water privilege sufficient for a grist mill, *"exclusive of the grist mill now standing on said premises,"* but after stating the boundaries of the lot they say, " which said tract of land, and water privilege, we have on our oaths appraised at the sum of $200." Having spoken of, and separated, the premises into three distinct rights, namely, the *land*, the *water privilege*, and the *mill*, and expressly excluded the latter, the appraisers, as if to guard against the possibility of dispute, say " which said *tract of land*, and *water privilege*, we have appraised," &c., showing that the mill was not only excluded from the description of the property when it was first mentioned, but was left out in the appraisal. " *Expressio unius, exclusio alterius*," applies here with full force. It may be said that the word land alone would include in its signification the mill standing upon it. Our answer is that the word land *alone* is not used. They have partitioned the property into *land, water privilege*, and *mill*, and so speak of it throughout the entire levy. The true inquiry is, not in what sense the word land *may* be used, but in what sense *did* these appraisers here use it? That they did not understand the word land as extensive enough in its signification to include mills standing upon it, or at least that they did not so use it, will be seen by reference to the appraisal of the parcel next following the one in dispute. They first describe the land, and then add, " also one undivided fourth part of the saw mill standing and being on the premises." Here they *expressly include* the saw mill, while in the former case they *expressly exclude* the grist mill. Now if the appraisers supposed a levy upon " one undivided fourth part of said piece of land," would have carried with it one fourth

part of the saw-mill standing upon it, why did they add "one undivided fourth part of the saw mill?" and "one fourth part of the clapboard machine?" The truth is that they intended to include the saw mill, and the clapboard machine, and they said so;—they intended to exclude the grist mill, and they said so. And again at the close of their certificate, when they recapitulate what they have appraised, the appraisers say, "which said tract of *land, saw mill*, and clapboard machine, and *water privilege*, we have appraised," &c., being as particular to state what was included, and to leave out what was excluded, as before. To say that the appraisers intended to include, what they so expressly exclude, seems to be absurd; and would not now be argued were it not a point seriously made in defence. The plaintiff respectfully contends, therefore, that the grist mill *building* was clearly excluded, and was clearly intended to be excluded, from the levy. Whether the *land on which it stood* was *intended* to be excluded, is doubtful.

If the grist mill building was excluded from the levy, it is immaterial to the rights of the plaintiff whether the land on which it stood was excluded or not. If it was so intended, and the court so hold, that is all the plaintiff claims. If it was not, the levy is for that very reason void. For a creditor cannot, by making a levy, change the character of the estate, and convert a part of it into personal property by taking the land under buildings and leaving them as personal estate, to be torn down or removed. Grover v. Howard, 31 Maine R., 550, and authorities there cited. Howard v. Wadsworth, 3 Greenl., 471.

3. When an *undivided part* of real estate is levied upon, the officer should state in his return some excuse for so doing, or the levy will be void. In this case not only an undivided half of the estate in dispute was levied upon, but of several other parcels; and yet no reason is stated by the officer or appraisers for so doing. For this reason, therefore, the plaintiff contends that the levy is void. Rawson v.

Lowell, 34 Maine R., 201; Merrill v. Burbank, 23 Maine R., 538; Stat. 1821, chap. 60, sec. 27.

*E. Gerry*, counsel for defendant.

1. This being an action of trespass *quare clausum*, it cannot be maintained, because the plaintiff was not in *actual possession* of the *locus in quo* at the time when the supposed trespass was committed. Bartlett v. Perkins, 13 Maine R., 87; Chitty Pl., 1 vol., 175; Rising v. Stannard, 17 Mass., 282; Mayo v. Fletcher, 14 Pick., 525; Taylor v. Townsend, 8 Mass., 411; Shepherd v. Pratt, 15 Pick., 32; Little v. Palester, 3 Maine R., 6.

2. In order to maintain this action the possession of the plaintiff must have been entire and exclusive. Cong. Soc. v. Baker, 15 Verm., 119; Dorsey v. Eagle, 7 Gill and Johns., 321; and the authorities before cited; 1 T. R., 430.

3. One tenant in common cannot maintain trespass *quare*, &c., against his co-tenant, or any person acting with the permission and consent of the latter, for claiming and exercising against the will of the former, exclusive possession of the common property and appropriating the entire income thereof. 4. Kent, 360; 1 Chitty Pl., 179; Porter v. Hooper, 13 Maine R., 25; Rising v. Stannard, 17 Mass., 282; Duncan v. Sylvester, 13 Maine R., 417.

In the case of Rising v. Stannard, before cited, the court say, " all the tenants in common have an equal right to the possession of the land held in common, and may occupy it themselves or any one of them may authorize a stranger to occupy under him. Anders v. Meredith, 4 Dev. and Batt., 199.

Trespass *quare*, &c., cannot be mainained for acts committed subsequent to an ouster without a re-entry into possession. The authorities before cited. 3d Ed. Oliver's Precedents, p. 549, and the authorities there cited.

Nothing short of the actual destruction of the common property will enable one tenant in common to maintain

*quare*, &c., against another. 4 East., 119, and the authorities there cited; 1 Chitty Pl., 179 and 79.

"If one of two tenants in common of an old stone wall pull it down in order to rebuild it, and does rebuild it, this is not destruction for which trespass lies. 1 Chitty Pl., 79 and 179, before cited.

Although the R. S., chap. 129, sec. 17, authorizes tenants in common to sue in severalty, but section 18, of the same chapter, requires that notice to the co-tenants shall be given before trial.

But the defendant wholly denies that the plaintiff has any legal title to the *locus in quo*, and claims title in himself. His title rests upon the construction of a clause in a levy made by defendant upon the land of Sumner Stone, December 4, 1837, which levy is made a part of this case.

The grist mill, at the time of the levy, stood upon the land levied upon, and described by metes and bounds, and there is no reservation or exception whatever.

Sumner Stone, the debtor whose land was levied upon, as the deeds in the case show, had the same interest in the mill that he had in the land, and therefore it was liable to be taken in execution.

The levy twice recites the fact that the "mill stands upon the premises."

The same rule of construction is to be observed in regard to a levy as a deed. Waterhouse v. Gibson and al., 4 Maine R., 230.

When several particulars are named in a deed descriptive of land intended to be conveyed, if some are false or inconsistent, and the true ones sufficient to designate the land, the false and inconsistent will be rejected. Vose v. Handy, 2 Maine R., 322; Wing v. Burgis, 13 Maine R., 111; Cutler v. Tufts, 3 Pick., 272; Pike v. Monroe, 36 Maine R., 309; Hall v. Fuller, 7 Vermont, 101.

From the lapse of time since the levy, and the fact that Jewett had taken a bond of purchase from Whitney of the mill, a presumption of a title by grant under the circumstan-

ces of this case, may fairly be raised.   Clark v. Faunce and al., 4 Pick., 245; Allen v. Scott and al., 21 Pick, 25.

MAY, J.   If the plaintiff can recover it must be under the first count in his writ, no acts of trespass being proved under the second.   Upon an examination of the deeds in the case, we are satisfied that the plaintiff has established his title to the *locus in quo,* described in his first count, unless the defendant by virtue of his attachment in his suit against Sumner Stone, and his subsequent judgment, and levy has acquired a title which overrides it.   Both parties claim under said Stone, who, at the time of the defendant's attachment, was seized as mortgagor, and tenant in common with others of one undivided half, part of a certain tract of land situate in the town of Waterford, upon Crooked river, (so called,) upon which tract was a grist mill and water privilege, said mill with its appurtenances being the *locus in quo.*   It appears that Stone derived his title to this, and one undivided fourth part of a certain saw mill, land, and water privilege, adjoining to the grist mill tract, by a deed from Moses Brown to him, dated February 7, 1835, to whom said Stone gave back on the same day a mortgage, to secure a part of the purchase money.

The defendant's attachment bears date May 9th, 1836. The deed from Stone on which the plaintiff, through several intermediate conveyances, relies, was a deed of warranty, dated September 12, 1836, acknowledged the same day, and recorded two days afterwards.   The levy relied on was made December 11, 1837, being within thirty days from the rendition of the judgment.   It further appears that Brown, the mortgagee of Stone, by his deed of quit claim, dated September 13, 1836, released and conveyed all his interest in said premises to said Stone.

It is contended in defence that the defendant's attachment, having been made before Stone had parted with his interest in the premises, and seasonably followed up by a levy upon his execution, gives him the better title.   This, it is conceded,

Jewett *v.* Whitney.

depends upon the validity and effect of the attachment and levy. If the attachment or levy does not cover the *locus in quo*, or if that part of the levy which is upon the tract on which the grist mill stands is void, then the title of the defendant fails.

The first objection urged against the defendant's title, is, that the tract of land, on which the grist mill stands, was not attached upon the defendant's writ against Stone. The deed from Brown to Stone and the levy both describe the saw mill tract, which adjoins that of the grist mill, as *a part* of lot No. 6, in the 14th Range; and all the deeds, through which the plaintiff claims, describe both mills as situate upon the same lot. From these facts, uncontrolled by any other evidence in the case, we infer that the premises conveyed by Brown to Stone, and mortgaged back to Brown, were a part of said lot No. 6. By the return of the officer who made the attachment, it appears among other things, that he attached not only all the right in equity of redeeming the land and mills mortgaged to Moses Brown, but also all said Stone's right, title, and interest in lot No. 6, in the 14th range in Waterford. There can be no doubt but that such an attachment authorized the defendant to levy his execution upon the mortgaged premises, in fee, provided the mortgage had been paid or satisfied, and the incumbrance created by it removed before the levy. Statute of 1821, chap. 60, sec. 1, re-enacted in the R. S., chap. 114, sec. 31; *Pillsbury v. Smyth*, 25 Maine R., 427. The deed of quit claim and release from Brown to Stone, made in September, 1836, operated to relieve the estate from the incumbrance created by the mortgage. We cannot doubt that such was the intention of the parties to the deed. This left the mortgaged premises in a condition to be levied upon, by the defendant, in fee, or to enure to the plaintiff by virtue of his deed, *if no valid levy* should be made.

The second objection to the defendant's title is more formidable. It is that the grist mill, which is the *locus in quo*, is not included in the estate set off upon the defendant's exe-

cution. It is urged, and not without reason, that the appraisers, by their language and from their description of the premises, manifestly intended to exclude from the levy, either the mill as personal property, or the mill and land on which it stood as a part of the realty; and that in either view the defendant took nothing by his levy, so far as relates to the premises described in his first count.

It is true, that if the appraisers have excluded from the levy the mill and land in fee simple, then it can be effectual only to pass the residue of the tract. So, too, if they have reserved to the debtor a right to occupy the mill, then standing upon the premises, until its destruction, this being an interest in the realty, would amount to a fee, defeasible by the destruction of the mill, which, if valid, would render any interference, on the part of the defendant, a trespass, while the mill should stand. Such a proceeding, however, would be unauthorized. In effect it would be to cut up a fee simple into parts at the pleasure of the creditor. This cannot be done, unless in some cases, where the statute authorizes an execution to be levied on the rents and profits of an estate. The present is not such a case. A levy, therefore, reserving such an occupation of a part of the premises set off, would be void in relation to the particular tract from which the reservation was made. So, too, "a creditor cannot, by making a levy, change the character of his debtor's estate, and convert a part of it into personal property, by taking the land under the buildings, and leaving them as the personal estate, to be torn down or removed." Grover v. Howard, 31 Maine R., 546. There is no evidence in this case tending to show that the grist mill standing upon the premises at the time of the levy, was not a part of the realty. On the contrary, all the deeds of conveyance recognize it as such, and the counsel on both sides have, in their arguments, so treated it. Therefore, if excluded as personal estate, the levy upon the tract on which it stands is void.

Our inquiry then is, does the levy exclude the grist mill or the mill and land on which it stands, in any of the pre-

ceding modes. If the fact of exclusion is established, it may not be material to ascertain precisely in what mode.

A levy is a statute conveyance to which the same rules of construction are to be applied as to a deed of conveyance. Waterhouse v. Gibson, 4 Greenl., 230, and there is no difference in their application and effect, whether applied to an exception, a reservation or a grant. Allen v. Scott, 21 Pick., 25. The intention, as developed in the language of the conveyance, considered in connection with the state of facts existing at the time, is to control. Sanborn and al. v. Hoyt, 24 Maine R., 118. In a levy the language of the return is to be taken as the language of the parties.

In the case before us the levy was upon several distinct and separate parcels of land, and that part of its language which is more immediately applicable to the present question, is as follows: "Also one other tract of land situated in Waterford, in said county, and on Crooked river, so called, it being one undivided half of said tract, with one undivided half of a water privilege sufficient for a grist mill, exclusive of the grist mill now standing on said premises." Then follows a description of the tract by metes and bounds, and a valuation of "the land and water privilege," no mention being made of the mill in such valuation. The one undivided half is appraised at one hundred dollars. The omission to mention the mill in connection with the land and privilege in this appraisal, while in appraising the very next tract described in the same levy, which is one undivided fourth part of a certain tract of land, with an undivided fourth part of a saw mill standing thereon, the land, saw mill, and water privilege are all specifically mentioned, is a fact strongly indicative of an intention to exclude the grist mill. These two tracts, with the mills and water privileges connected therewith, were all the estate, parts of which were conveyed by Brown to Stone, February 7, 1835, as appears by his deed of that date. The consideration of that deed was $600. The valuation in the levy of the whole estate, so conveyed, if the grist mill was included in the levy, was but $275. May not

this difference in the value indicate that the grist mill standing on the premises was excluded? Besides, if we leave out of the levy the words " exclusive 'of the grist mill now standing on said premises," such, in other respects, is the almost verbatim similarity between the two descriptions in the deed and the levy, that we are led to infer that the appraisers must have had the description in the deed before them to copy from when they made the levy. If such was the fact, then the insertion of the words of exclusion in the levy shows clearly an intention to diminish the estate which was conveyed to Stone by the deed; and if the appraisers had not such description before them, no satisfactory reason has been assigned in the defence for using these excluding words in the levy, and none can be assigned, except that they were used for the purpose of excluding the mill, either with or without an interest in the land, from the operation of the levy. Unless such was the intention, no effect whatever can be given to the words.

In the case of Howard v. Wadsworth and al., 3 Greenl., 471, there was a conveyance by deed of one undivided half of a mill site, with the falls and privileges, " *exclusive of the grist mill now on said falls*, with the right of maintaining the same." These words of exclusion in the deed were held to be a reservation securing to the grantor the mill and the right of maintaining the same so long as it should stand on the premises. The words, " with the right of maintaining the same," do not appear to have been regarded by the court as having any influence in determining the fact of the exclusion of the mill, but simply as tending to show the nature and extent of the interest intended to be reserved. No distinction, therefore, is apparent between the case cited and the one at bar, so far as relates to the construction touching the fact of exclusion. In view, therefore, of this authority, and the considerations before stated, we are satisfied that the grist mill standing on the premises at the time of the levy, either with or without an interest in the land, (and as we have before said, so far as this case is concerned, it matters not which,)

was in fact intended to be excluded from the levy, so that the defendant, by means of it, acquired no title to the mill or the land on which it stands.

It is suggested in defence, that the word *exclusive* instead of *inclusive* was used in making the levy by mistake. If this be so, the court have no power, either at law, or in equity, to correct it. Linscott v. Fernald and al., 5 Greenl., 496; Lumbert v. Hill and al., 41 Maine R., 475. The other objectios urged against the validity of the defendant's levy need not be considered.

It is next objected by the learned counsel in defence that, under the circumstances of this case, title in the plaintiff is not alone sufficient to maintain the action. It is said the plaintiff was not in actual possession when the acts of trespass complained of were committed. It appears that he was a tenant in common with others, and his cotenants were in the actual occupancy of the mill, accounting to him for his share of the profits. It does not appear that they were lessees. At most they were but the servants of the plaintiff, carrying on, upon shares, his portion of the estate. Their possession was his possession. Hobson testifies that Lebroke, the plaintiff and himself, who were the then owners of the mill, had been in possession, occupying jointly until the defendant took possession, on the 8th or 10th of July, 1854. Such possession is sufficient to maintain *trespass quare clausum*. If however the plaintiff's cotenants could be regarded as tenants at will of his share in the estate, still the action would be maintainable for acts injurious to the freehold. Davis v. Nash, 32 Maine R., 411.

The gravamen of complaint as alleged in the writ, is the breaking and entering of the defendant into the plaintiff's close or mill, on the 8th of July, 1854, and thereafterwards tearing down and destroying said mill, and taking and carrying away the materials thereof, whereby the plaintiff has been wholly deprived of the benefit of his said mill. It is, in substance, a usurpation of the fee, and an expulsion of the plaintiff from his portion of the estate. The defendant was not a

tenant in common with the plaintiff, and the acts complained of do not appear to have been done by the license or direction of any person that was. The plaintiff's cotenants seem to have been passive, taking no adversary part in depriving the plaintiff of his share of the profits of the mill. They merely assented to the title assumed by the defendant, and agreed to account to him for the profits of the plaintiff's share, and subsequently did so. This case is therefore wholly unlike that of Rawson v. Morse and al., 4 Pick., 127.

The authorities cited in defence clearly show that possession in fact, is indispensable to the support of *trespass quare clausum*, and that after an ouster no action can be maintained for a subsequent trespass without a re-entry. If the defendant took possession under his levy, this was an ouster, notwithstanding his levy upon the *locus in quo* was void. The difficulty in the way of the defendant's position, is, that the facts in the case show a subsequent re-entry by the plaintiff before the acts of trespass complained of were committed. The testimony shows that he was in possession at the time, and that he received his share of the profits for the preceding year. The statements of Lebroke, who was a witness for the defence, as to what the plaintiff said about having a bond, or a claim from Whitney on the mill, are too indefinite and uncertain to authorize the conclusion that the plaintiff was in possession as tenant, or otherwise than in his own right. In view, therefore, of the facts, we find nothing in the relation of the parties which constitutes a defence; or in the nature of the occupancy by persons other than the plaintiff, which divested him of that possession in fact, legally necessary to the maintenance of this suit.

The only remaining question is that of damages. The proof shows that the mill, standing on the premises at the time when the defendant took possession, in July, 1854, had become nearly worthless. It was so rotten that it could not be repaired, and the witness, Lebroke, testifies that it was almost impossible to use it. In its then condition the profits of it could not have exceeded the cost of the repairs. Under

these circumstances the defendant co-operated with the co-tenants of the plaintiff in tearing down the old mill and erecting, at an expense of more than two thousand dollars, a new one in its stead. So far as the materials obtained from the old mill were of value, and would answer, they were put into the new. While the plaintiff may, possibly, have lost some immediate profits, before the date of his writ, by his expulsion from the mill, he has largely gained in the increased value of his estate. His damages, therefore, can be only nominal.

*Judgment for the plaintiff for one dollar.*