THE ATCHISON TOPEKA & SANTA FE RAILWAY COMPANY v. IRA DAVENPORT *et al.*

No. 12,455.  (69 Pac. 195.)

SYLLABUS BY THE COURT.

1. PARTIES — *Tenants in Common — Action for Damages to the Fee.* Where a man residing in a sister state dies testate, leaving a widow surviving him, and where such testate owns at the time of his decease lands situate in Kansas, which, by his will, were devised to his executors and testamentary trustees, in an action brought by the latter for damages to the fee, committed against said real estate, in which the right of the plaintiffs to maintain such action is properly challenged by a plea of the defendant, in the absence of any showing that said widow consented to such will, or that she has elected to take thereunder, it will be pre-

Railway Co. v. Davenport.

sumed that she is the owner of a one-half interest in said lands, and, therefore, a necessary party to said action.

2. RAILROADS — *Under-grade Crossings — Damages — Estoppel.* Where a railway company, upon a trial in the district court on an appeal from an award under proceedings instituted by such railway company to condemn a right of way, which trial is held after the construction of the railroad, and in which such railway company offers and causes to be admitted in evidence the map and profile of its line showing an opening or under-grade crossing of value to the land in controversy, and where, upon such trial, the railway company asks and procures to be given to the jury an instruction that the landowner has the right to maintain any crossing under the track of the railroad upon such right of way " when such under-grade crossing in no wise interferes with the defendant's [railway company's] use of such track or tracks for the purpose of operating and carrying on its business thereon," such railway company or its successor may not close up such under-grade crossing without the consent of the landowner, and, if it does so, damages may be recovered therefor by such owner.

Error from Franklin district court; SAMUEL A. RIGGS, judge.   Opinion filed June 7, 1902.   *In banc.* Reversed.

### STATEMENT.

THIS was an action brought by the above-named defendants in error as executors and trustees of the last will and testament of John Davenport, deceased, against the above-named plaintiff in error for damages alleged to have been sustained by them on account of the filling up of a certain trestle or wooden bridge in the line of its railroad where the same crosses a low place or depression on the land described in the petition, and also for damages accruing to them by reason of constructing a drain through the railroad embankment, thereby causing a pond to be drained and the water thereof to overflow other portions of the land described in said petition.   In the petition two causes of action are set out, the first being for damages on account of filling in a trestle or wooden

bridge, and the second for so constructing a drain through the embankment of the railroad as to drain a pond of water on the land and overflowing other portions of said land. However, upon the trial, after the plaintiffs had introduced all their evidence and rested their case, and a demurrer had been interposed to the evidence as to each of the causes of action, the plaintiffs dismissed their second cause of action, and the case was tried and submitted to the jury upon the averments contained in the first cause of action only.

The cause of action relied on for a recovery by the plaintiffs alleged that they were the owners and in possession of the east half of the southwest quarter and also the southeast quarter of section 28, and the north half of the northeast quarter of section 33, all in township 16, of range 19, containing 320 acres of land, more or less; that during the year 1882 John Davenport owned in fee simple and possessed said land, and so continued until his decease, on June 15, 1895; that in the year 1882 the Kansas City & Emporia Railroad Company, the predecessor in title to the plaintiff in error, applied to the judge of the district court of Franklin county, Kansas, for the appointment of commissioners to lay off and condemn a route through Franklin county for that railroad; that commissioners were duly appointed and qualified, and, after giving the notice required by law, at the time and place mentioned in said notice, met, appraised, laid off and condemned a right of way 100 feet in width across the land described in said petition, for which $138.90 was allowed for the land taken and $561.10 as damages to the land not taken, making a total of $700; that John Davenport, the then owner of the land, appealed to the district court of Franklin county from such award as to the land

taken and all other damages sustained by him; that the railroad was constructed under the condemnation proceedings and put in operation; that upon the construction of said road there were left two under-grade crossings leaving a sufficient space for the passage of surface-water, which in wet seasons flowed through them in large volumes, and for horses, cattle and all kinds of live stock and farm wagons to pass from one part of said tract of land to the other; that the trial of said appeal resulted in a verdict in favor of the appellant and against the railroad company, awarding him damages for the land taken and damages to the portions of the land not taken in the sum of $1936.60, and costs; that the Kansas City & Emporia Railroad Company thereupon fully paid the amount of said award; that for some years thereafter said railroad company owned and operated, or caused to be operated, its line of railroad across said land; that finally, by consolidation, lease, or other conveyance, its property was transferred to the Atchison, Topeka & Santa Fe Railroad Company, which latter company owned and operated the same until its property was sold under foreclosure, and said railroad became by purchase the property of the plaintiff in error, which had ever since said purchase continued to own and operate the same; that on the 15th day of June, 1895, John Davenport died testate, being then a citizen and resident of the county of Steuben, in the state of New York; that his last will and testament were duly admitted to probate in said Steuben county, and on the 1st day of July, 1895, a duly authenticated copy was admitted to record in the probate court of Franklin county, Kansas; that by said will the plaintiffs were constituted executors thereof and testamentary trus-

tees of the uses and trusts therein and thereby created, and that letters as such were issued to them; that by the provisions of said will the land described in the petition was devised to them in fee, subject to said trust, and that they have ever since been and at the time of the bringing of this action were the owners thereof and in possession of the same as such executors and testamentary trustees; that in the year 1895 the plaintiff in error unlawfully, and without the knowledge or consent of said John Davenport or the plaintiffs, filled one of the pile trestles or wooden bridges marked on the map and profile "60 ft. piling," but as the statute of limitations had barred any action on that claim no damages were asked on account thereof; that on or about the 15th day of June, 1899, the plaintiff in error unlawfully and wrongfully, and against the will of the plaintiffs below, entered upon the said sole remaining under-grade opening and crossing, marked on the map and profile "45 ft. piling," laid two large iron or steel tiles, each of about four feet internal diameter, on the natural surface thereof, and then filled up solidly said crossing and opening with earth and stone, thus constructing a high embankment therein and thereon, and then laid the railroad on the same, and that by reason of closing this trestle or wooden structure the plaintiffs or their tenants could not use the same in driving their cattle, horses, wagons or teams from one part of the land to the other; that John Davenport purchased the land in question in 1880, and that, ever since the construction of the railroad-track across the same, he, and since his death the plaintiffs, had, until on or about June 15, 1899, the date of filling up said trestle or wooden bridge, been in notorious, exclusive, visible and adverse possession of said opening and crossing, and

had acquired a perpetual easement and adverse possession to the same.

Certain instructions to the jury, given at the request of the railroad company in the action of John Davenport against the Kansas City & Emporia Railroad Company, which recognized the right of the landowner to maintain under-grade crossings so long as the same did not interfere with the operation of the railroad, were set out in the petition, and it was averred that such map and profile was offered in evidence by the railroad company and received on the trial of such action to condemn the right of way. It was alleged that on account of filling up this trestle or wooden bridge, the farm as a whole was depreciated, and the plaintiffs were damaged in the sum of $3000, for which amount they asked judgment.

The answer of the plaintiff in error in substance admitted acquiring the right of way over the premises, and that on an appeal to the district court of Franklin county the sum of $1936.60 was awarded John Davenport as and for the value of the land taken and damages to the land not taken, and that the Kansas City & Emporia Railroad Company paid the same as alleged in the petition, and it alleged that the railroad company by such proceedings acquired an absolute and perpetual right of way over and across the premises described for its railroad, and a paramount right to the use and enjoyment of the same for such purpose. It denied that any reservation was made for under-grade crossings, or that any rights were granted to John Davenport for any such under-grade crossings. It denied that the trestles or wooden bridges marked "45 ft. piling" and "60 ft. piling" on the map and profile were so marked to designate under-grade crossings for the use of the

landowner, but it averred that they were so marked by the engineer in charge of the construction of the road to indicate how the railroad should be constructed over low depressions and waterways, and as a guide to the persons in charge of the work of building the railroad. It denied the authority of the plaintiffs below to maintain the action, and alleged that they were not the real parties in interest. It also denied generally all the allegations of the petition not thereinbefore specifically admitted. The instructions of the district court of Franklin county and the findings of the jury in the case of the appeal of John Davenport from the award of damages made by the condemnation commissioners were set out in full in the answer. The defendants in error, in their reply, denied generally the allegations of new matter contained in the answer. Upon these issues, at the January, 1900, term of the district court of Franklin county, the case was tried before a jury, and a verdict of $800 was rendered against the railway company, upon which judgment was duly entered. The railway company brings error.

Upon the trial of the case, the will of John Davenport, deceased, was offered in evidence. Such will contained bequests to the wife of the testator, Sarah Lyon Davenport, of books, furniture, household fixtures, paintings, and then proceeded :

"And I further give and bequeath to my said wife, Sarah Lyon Davenport, two hundred and fifty thousand ($250,000) dollars, the same to be received and accepted by her in lieu of any right or claim to dower or other interest in my estate, except as provided by this will. And it is my request and desire that, in case my wife should accept said provision made for her benefit as aforesaid, she should forthwith execute and deliver to my executor, hereinafter named, a full

conveyance and release of all her rights of dower, or any other interest in my said estate.''

There was a bequest made to the executors and trustees of $50,000 in trust to invest and reinvest, and to ''pay over the interst or income as the same may accrue, but not by way of anticipation, to my said wife, Sarah Lyon Davenport, during her natural life.'' The ninth clause of the will contained the following :

''I nominate, constitute and appoint my brother, Ira Davenport, my cousin, William S. Burnes, and my brother-in-law, Reuben Robie Lyon, the executors of this my last will and testament, and trustees for the purpose therein named, and I hereby authorize and empower my said executors and trustees, or any two of them, to sell and convey any and all my real estate in the state of New York, or any other state in the Union, at public or private sale, by deed with or without covenants binding my estate ; and I further authorize any two of my said executors and trustees to execute deed in pursuance to any contract heretofore made by me which I may be bound to execute, and also to appoint agents for the sale of any lands that may belong to me.

''I authorize and empower my said executors to convert all of said estate, not otherwise specifically devised or bequeathed, into money as fast as they deem it advisable, and to divide the proceeds thereof, and to make all necessary contracts and conveyances therefor.''

After the will was read in evidence, defendant's counsel objected to further testimony in the case, and moved for judgment for the defendant for costs, for the reason that under the will read in evidence it did not appear that the plaintiffs were the real parties in interest, or that they had any right to maintain the action, which objection was overruled and exceptions taken.

In the course of the trial, it was admitted that at the

time of the death of John Davenport he left his widow surviving him, but there was no evidence showing or tending to show any election by her to take under the will. The court was requested by the railway company to instruct the jury that she was the owner of one-half of the land in question, and entitled to one-half of all damages done to the land by the defendant, which instruction was refused and exceptions taken.

The specifications of error, so far as they will be considered in the opinion, are as follows:

"1. In overruling the objection made by the defendant below to the introducing of any testimony in the case and its motion for judgment in its favor for costs.

"2. In overruling the demurrer filed by the plaintiff in error to the evidence of the defendants in error."

"6. In overruling the motion filed by the plaintiff in error for a new trial.

"7. In rendering judgment on the verdict of the jury in favor of the plaintiffs and against the railway company."

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.

*J. W. Deford,* and *W. A. Deford,* for defendants in error.

The opinion of the court was delivered by

Ellis, J.: Under the will of John Davenport, the lands of which he died seized and possessed in Kansas were not specifically devised to his executors and testamentary trustees, still we think the powers contained in the will and the duties imposed thereunder were equivalent in law to a devise for the uses and purposes therein named.

As to the real estate situated in this state, such will would not affect the rights of his widow thereto, unless she consented to such will in writing, or

elected to take under it after the decease of her husband.   There was a total failure of proof in respect to both propositions.   For aught that appeared in the case, the widow may still be claiming to own a one-half interest in the land, and, when challenged by the answer of the railway company, it was the duty of the plaintiffs to show the facts in support of their claim of ownership, and to negative the presumption that the widow inherited an interest under the laws of Kansas.   It is idle to cite authorities upon these fundamental propositions, and we do not understand the counsel for defendants in error seriously to contest either of them.   They say in their brief:

"As the law now stands, if he left no children, and she had repudiated his will, she would have taken by descent the one undivided half of the Kansas lands, and the trustees the other half, by virtue of the will, and she and they would be tenants in common.   Assuming, then, but not admitting—for the truth is, she accepted the will—all that to be so, and to have been shown at the trial (and it was not), still the plaintiffs below were entitled to recover the entire damages for the choking up of this crossing; for it is well settled that a tenant in common in exclusive possession can recover damages done to the common freehold, without joining the cotenant not in possession, 'for the benefit of himself and cotenant.'"

In support of this contention, counsel for defendants in error cite us to the following cases :  *Bigelow v. Rising*, 42 Vt. 678 ;  *Jewett v. Whitney*, 43 Me. 242 ;  *Grassmeyer v. Beeson*, 18 Tex. 753, 70 Am. Dec. 309 ;  *Bricker v. Ledbetter*, 26 Kan. 269 ;  *Anderson v. Gray*, 134 Ill. 550, 25 N. E. 843 ;  *Bird v. Lisbros*, 9 Cal. 1, 70 Am. Dec. 617 ;  *O. & G. S. & R. Co. v. Tabor*, 13 Colo. 41, 21 Pac. 925 ;  *Thomas v. Hunsucker*, 108 N. C. 720, 13 N. E. 221.

In the case of *Bigelow v. Rising*, supra, it is stated

in the syllabus : "One of two or more tenants in common of real estate may maintain an action in his own name for a trespass on such estate against a mere stranger, and in such action may recover the whole damage to the property for the benefit of himself and his cotenant."

In *Jewett v. Whitney*, supra, the third clause of the syllabus reads as follows : "A cotenant in possession may maintain trespass *quare clausum* against a stranger for an injury to the freehold."

In the syllabus in the case of *Grassmeyer v. Beeson*, supra, is found the following : "We have heretofore decided that one tenant in common may maintain trespass to try title against a stranger."

In *Bricker v. Ledbetter*, supra, the first clause of the syllabus reads : "Where it appears that a husband and wife entered into the possession of vacant land, built a house thereupon and occupied it, such possession is *prima facie* evidence of title, and sufficient as against a mere trespasser and wrong-doer."

The last clause of the syllabus in *Bird v. Lisbros*, supra, is as follows : "A party in possession of land is deemed in law the owner, against all persons but one having superior title thereto ; possession is evidence of title, and the possessor, in conveying, is deemed to convey the title itself sufficiently to enable his grantee to maintain ejectment against a mere trespasser."

The other cases cited have no possible bearing upon any phase of this case, and we are at a loss to know why they are referred to in the brief. It will be seen by the quotations from the authorities cited above that one tenant in common, in exclusive possession of lands and tenements, may maintain an action against a mere trespasser and wrong-doer for the benefit of

himself and his cotenants.   In this case the railway company was neither a trespasser nor a mere wrong-doer.   It acquired possession of its right of way in a lawful manner, and may not be charged in this action with an unlawful entry thereon.   In *Mo. Pac. Rly. Co. v. Manson*, 31 Kan. 337, 341, 2 Pac. 800, 803, this court held:

"Under condemnation proceedings, a railroad company acquires the exclusive use of the land condemned, so far as it is necessary for railroad purposes, and the original landowner has no right to go upon the land or construct fences thereon, if his action interferes with the use of the property condemned for railroad purposes.   Therefore, in many cases, the right of the owner practically amounts to nothing where the land is condemned for a railroad company, because the purposes of the railroad company may require the use of the land taken to such a degree as to forbid the owner from any benefit whatever."   (See, also, *K. C. Rld. Co. v. Comm'rs of Jackson Co.*, 45 Kan. 716, 26 Pac. 394.)

As the case must go back to the court below for a new trial, it is proper that we should determine questions which are here fairly presented and relate to the substantive rights of the parties, and which, if the proofs justify it, are certain to be raised again in the trial court.

As to the claim of the defendants in error, that they and their testate acquired a title to the under-grade crossing by adverse possession, it will suffice to say that the contention is wholly without merit in fact or foundation in law.

Upon principle and authority, the rule ought to be, and undoubtedly is, that where a railway company instituted proceedings to condemn land for use as a right of way, and upon a trial in an appeal to the district court from the award of damages by commission-

ers, which trial was held after the construction of the line of railroad, it appeared that an under-grade crossing of great value to the farm had been left by the railway company, and where, upon the trial of such an action, the map and profile of the road, showing the width of such opening or under-grade crossing, were offered in evidence, and the railway company, in order to reduce the damages to be awarded, asked and obtained an instruction to the jury "that the plaintiff has the right to build, construct and maintain any crossing of defendant's right of way upon his land which shall be under the track or tracks of defendant's road upon such right of way, when such under-grade crossing in no wise interferes with the defendant's use of such track or tracks, for the purpose of operating and carrying on its business thereon"; and where, several years later, the company, or its successor, while improving the railroad, instead of putting in a permanent iron bridge, and preserving to the landowner the use of such crossing, wholly ignored the rights which upon the aforesaid trial in the condemnatory proceedings the jury were presumably led to believe had become vested in the latter, and closed up such crossing without his consent, and against his will; under such circumstances the imposing of additional servitude upon the land, to the injury of the owner of the fee, should be recompensed by an allowance of additional damages, which may be recovered in a proper action by such owner. (*Missouri, K. & T. Ry. Co. v. Haines*, 10 Kan. 440, 442; *Kansas Cent. Ry. Co. v. Allen*, 22 id. 286, 31 Am. Rep. 190; *K. C. & E. Rld. Co. v. Kregelo*, 32 id. 608, 5 Pac. 15; *W. & W. Rld. Co. v. Kuhn*, 38 id. 104, 16 Pac. 75; *C. K. & W. Rld. Co. v. Cosper*, 42 id. 561, 22 Pac. 634.)

Such being the purpose of this action, under its

pleadings the railway company was entitled to have the matter of damages settled once for all, and to that end it could, and did, insist that the real parties in interest should be made parties to the suit.

Because the evidence does not show that the plaintiffs in the court below were entitled to maintain this suit without joining the widow as a party plaintiff, the judgment is reversed and a new trial granted.

All the Justices concurring.