Royston vs. Royston.

No. 32.—Cyrus A. Royston, and others, plaintiffs in error, *vs.* Mildred F. A. Royston, defendant in error.

[1.] A proper mode for the widow to signify her election to take a child's part, instead of dower, in the real estate of her deceased husband, is to file a written declaration to that effect, in the Court of Ordinary where administration has been granted upon the estate.

[2.] Previous to 1839, administration might have been granted in any county in the State where there were *bona notabilia*, belonging to the intestate ; and it will be presumed in favor of such grant, that proof was made of assets in such county.

[3.] Upon marriage, the real as well as personal property of the wife vests in the husband, and his occupancy of the land is evidence that he had reduced it to possession, even if that were necessary, to the consummation of his right.

[4.] Dower is a favorite of the law, and neither the husband nor the Courts, nor any other human power can compel the wife to relinquish this right, in choate though it may be, unless she is asking the aid of a Court.

[5.] The law is reluctant to interfere with the rights of property, and properly so ; it will not seize and appropriate it to even public uses, without just compensation ; and this is going quite far enough. It should require a strong case, even of absolute necessity, to justify the Courts in going beyond this.

[6.] The act of 1837, will coerce even recusant parties who are *sui juris*, to comply with a decree for partition ; not so with *feme coverts* as to their rights of dower, who are seeking no relief at the hands of the Court.

[7.] A juror is competent, notwithstanding he may have expressed an opinion as to the subject matter of the litigation.

[8.] Where answers to bills are sworn to out of the State, the oath should be administered by some one authorized by the laws of Georgia or by act of Congress.

VOL. XXI.   11

[9.] The provision in the State Constitution, requiring the title to lands to be tried in the county where they lie, does not apply where the title is incidentally involved only, and is not directly put in issue.

*In Equity*, in Dougherty Superior Court. Tried before Judge ALLEN, June 1856.

This was a bill filed by Mildred F. A. Royston, widow and administratrix with the will annexed of George D. Royston, deceased, against Cyrus A. Royston, Edward J. Swain and Winbern J. Lawton, guardian of Sarah Elizabeth and Mary Strother Royston, minors, and its principal object was to obtain a decree for the sale of a valuable plantation in the county of Baker.

The bill alleges, that Dr. Felix G. Calloway died intestate, leaving a widow and two children, infant daughters, Mary Frances, who married Cyrus A. Royston one of the defendants, and Margaret Ann, who married the defendant, Edward J. Swain. That said Calloway died seized and possessed of a large plantation consisting of near two thousand acres in the county of Baker, and a small portion thereof in the county of Lee, known as the " Calloway place," to which his widow and two children were entitled, as his heirs at law.

Mrs. Calloway afterwards intermarried with George D. Royston complainants testator, and died. George D. subsequently intermarried with complainant and by her had two children, the said Sarah E. Royston and Mary S. Royston, for whom Winbern J. Lawton is guardian. George D. Royston, after his intermarriage with Mrs. Calloway, became the guardian of her two daughters, (now Mrs. Cyrus A. Royston and Mrs. Swain) and removed to and took possession of the Calloway place in Baker county, and continued in possession of the same till his death; he died in the year 1852, leaving a will, and bequeathed amongst other things, as follows:

" I also give and bequeath to my said wife an equal portion with my two 'children, of all my lands in the second

district of Baker county, it being one third portion thereof, to be hers during her natural life, and at her death the same to descend to my children according to the laws of said State. This bequest includes the land which I own individually in said district, and my portion of the land heretofore belonging to the estate of the late Dr. Calloway, which I hold in right of my former wife, Susan S. Royston."

The land which George D. Royston held in right of his wife (Mrs. Calloway,) remained undivided between him and the two children of Calloway, at the time of his death. The bill alleges that the said settlement of lands is valuable only as a cotton plantation, and a division or partition into three several and distinct tracts would depreciate its value, and be greatly to the injury of the parties entitled to it.

The bill prays a sale of the entire body of land in one tract, and that the proceeds be divided between the parties according to their respective interests, viz.: one-third part to Cyrus A. Royston in right of his wife, one-third part to Edward J. Swain in right of his wife, and one-third part to complainant as administrator with the will annexed of George D. Royston. Complainant proposed in her bill to receive one-third part of the share coming to the estate of her testator, for her life, in lieu of dower, and to secure the principal or *corpus* of said funds to her two daughters, the remainder-men.

The bill was filed seventeenth February, 1853, and was met by demurrer from Cyrus A. Royston on the ground, first, that his portion or interest in said lands could not be sold without his consent, and the bill disclosed that his consent had been refused to this application; and second, because complainant has her remedy, if any, at law.

The Court overruled the demurrer.

Edward J. Swain and wife answered the bill and consented to a sale as prayed for.

Winbern J. Lawton, as guardian *ad litem*, answered and also consented to a sale.

Royston vs. Royston.

Cyrus A. Royston filed his answer and denied that George D. Royston, complainant's testator, had any interest or title in or to said plantation, at the time of his death. That the only interest he ever had in the same was his former wife's (Mrs. Calloway) dower therein, which terminated at her death. That if Mrs. Calloway had ever renounced her dower and elected a child's part as provided by statute, that the same not having been divided, partitioned, assigned and set over to said Royston during her lifetime, was never reduced by him into possession and did not pass under the will of said George D. Royston.

He further insisted, that if the said George D. Royston was entitled to a third of said plantation, which he had devised to complainant and his two daughters; that such right or interest vested this Court with no power to order a sale of said premises. That he objected to such sale, and claimed and insisted that his third of said land, be set off and assigned to him.

The answer further objected that all proper parties were not before the Court; the wife of respondent and the wife of Edward J. Swain not having been served with process, nor made parties to said bill.

The answerer further objected to the jurisdiction of the Court, as to that part of the plantation situated in the county of Lee.

The cause being called up on the fourteenth June 1856, complainants' counsel moved to take the bill *pro confesso*, as to Mrs. Cyrus A. Royston, which motion was resisted by defendant. The Court granted the order and defendant's counsel excepted.

Upon the seventeenth June, the case being up for final trial, on the appeal, a list of the grand jury was handed to defendant's solicitor, who objected to John M. Cochran, one of the jury, and asked that he be put on his *voir dire*, which being done, the presiding Judge asked the juror if he had expressed an opinion as to which party ought to prevail,

which being answered in the negative, he was asked by the Judge if he had a wish or desire as to which party should succeed. This question was likewise answered in the negative. Counsel for Cyrus A. Royston asked the juror if he had not expressed the opinion that the Calloway lands could not be divided without injury to the distributees; counsel for complainant objected to the question, and the Court sustained the objection and decided that no other questions than those propounded by the Court, could be put; to which ruling defendant's counsel excepted.

The jury being made up, Cyrus A. Royston objected to the case proceeding for want of proper parties, to-wit, Mrs. Mary Frances Royston and Mrs. Margaret Ann Swain, which objection was overruled by the Court, and the cause ordered on to trial, and Cyrus A. Royston excepted.

Counsel for Cyrus A. Royston objected to Edward J. Swain's answer being read, as it was not sworn to and authenticated as required by law, which objection was overruled and counsel excepted.

*Eubanks Tompkins*, a witness, produced by complainant; was asked by complainant's counsel, if the land was divided into three equal parts, and the one-third part subdivided into three parts, if one part might not fall into a place that would sell for a price varying from $20 to 5 cents per acre: defendant's counsel objected to the question; Court overruled the objection and witness answered the question in the affirmative, and defendant's counsel excepted.

Complainant offered in evidence a paper dated at Crawfordville, purporting to be a renunciation by Mrs. Susan S. Calloway, of her dower, and election of a child's part, in the estate of her late husband, Felix Calloway, and entered of record in the office of Ordinary of Taliaferro county.

The case under the charge of the Court, was sumbitted to the jury, who found for complainant, and decreed a sale of the lands, and a division of the proceeds as prayed by the bill.

Whereupon, Cyrus A. Royston made a motion to set aside the verdict, and for a new trial on the following grounds:

1st. Because the defendant's counsel was not allowed to ask the juror, John M. Cochran, when on triors, if he had not formed and expressed the opinion that the land described in the bill, was not susceptible of division without injury to the parties.

2d. Because the Court erred in admitting in evidence Edward J. Swain's answer, it not having been sworn to before any judicial officer of Georgia, or before any person authorized by the laws of this State, or acts of Congress, to administer an oath.

3d. Because the Court erred in admitting the answer of Mrs. Swain, it not having been legally sworn to, and she being no party to the bill.

4th. Because the Court erred in admitting the statement of Eubanks Tompkins, that if the lands were divided into three parts, and one part again subdived into three portions, that one portion might fall in a place that would sell, varying from $20 to 5 cents per acre.

5th. Because the Court erred in allowing the bill to be taken *pro confesso* against Mrs. Mary Frances Royston.

6th. Because the Court erred in admitting in evidence the paper from the Ordinary's office of Taliaferro county, purporting to be the renunciation of Mrs. Susan S. Calloway's dower and her election of a child's part in the lands of her deceased husband.

7th. Because the Court refused to give the jury the following charges as requested by defendant's counsel:

First; That if they believe from the evidence that Felix Calloway resided in Baker county at the time of his death, then the Court of Ordinary of Taliaferro county had no jurisdiction, either to grant administration of his estate or to accept Mrs. Calloway's renunciation of dower and election of a child's part of her husband's real estate; that this

election should have been made known to the administrator, and if this is not proven, complainant must fail.

Second; That even if Mrs. Calloway's election of a child's part is good, yet if the jury believe that this was never assigned and set apart to George D. Royston in his first wife's life time, the complainant in this bill cannot recover as his administratrix with the will annexed.

Third; That in order to make an election of a child's part good, it should be some affirmative, overt act, (this was charged) and if in the Court of Ordinary, it should be in the proper county, and the administrator should have notice.

Fourth; That in order to vest the title in George D. Royston, it was necessary that there should have been a partition in the lifetime of his wife, (Mrs. Calloway) and her share assigned and set over to him so as to have identified his particular part.

Fifth; That unless the election of a child's part by the widow was made, and the land reduced to possession by George D. Royston in his lifetime, his estate has no interest or title therein, and it belongs solely to the daughters of Felix Calloway, deceased.

Sixth; That Mrs. Swain is a necessary party to the bill as well as Mrs. Cyrus A. Royston, and the jury cannot find so as to bind them, unless they are made parties.

Seventh; Because the Court refused. when called on by defendant's counsel, to explain to the jury what was an overt act of election.

8th. Because the Court erred in charging, that it was immaterial when an administration on Calloway's estate was granted, so far as the election is concerned, and that it was not necessary that Calloway's administrators should have had notice of the election, in order to render it legal.

9th. Because the Court erred in charging the nine following propositions, as requested in writing by complainant's counsel:

First; That if the widow went before the Ordinary of

Taliaferro county, the administrators residing there, and made her election of a child's part, and that election was entered of record, it was a sufficient declaration of such election to entitle her to the same.

Second; The right of the widow under the Act of 1807, to elect a child's part, does not depend upon the validity of the administration, but such election is good though the administration be void for want of jurisdiction of the Court granting it.

Third; That when a widow makes her election of a child's part, the title vests without any division or assignment thereof to her.

Fourth; If Mrs. Calloway acquired a title by election, to a child's part, upon her marriage with George D. Royston it vested in him, so far at least as to entitle him to reduce it into possession.

Fifth; That if George D. Royston entered upon the possession of the premises, he being entitled to one-third in right of his wife, that was a sufficient reduction to possession to perfect his title to one-third.

Sixth; If there was no reduction to possession in his lifetime, the complainant, as his representative, has the right to reduce it to possession for the benefit of his heirs at law.

Seventh; That if they believe from the evidence that it is better for the plantation to be sold in bulk, rather than be divided, they will so decree.

Eight; That if they believe from the evidence that the plantation is not susceptible of division into three parts so as to give to each of the claimants an equal share in value, then they must find for complainant, and decree the land to be sold.

Ninth; That if they believe from the evidence, that the land would be depreciated, by a division into three parts, below its market value in bulk, and for what it would sell for in bulk, then they must find for complainant, and decree a sale.

10th. And because the jury found contrary to equity and the justice of the case.

11th. Because the jury found and decreed by their verdict, that the lands lying in the county of Lee be sold, where this Court had no jurisdiction over said lands.

Upon hearing the motion for a new trial, the presiding Judge refused the same, and therefore defendant's counsel excepts and assigns for error all the rulings, decisions, charges and refusals to charge, specified and set forth in their grounds for new trial.

SCARBOROUGH & WARREN, for plaintiff in error.

VASON & SLAUGHTER, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

We do not pretend in this case, to examine in detail, the numerous points presented by this record. All we shall attempt is, to announce succinctly, the judgment of the Court upon its main facts and features.

[1.] We are clear that the method adopted by the widow of Dr. Calloway, of electing to take a child's part, instead of dower, in the real estate of her deceased husband, was right and proper. None better has been suggested, or occurs to this Court. It is objected, that no notice was given to the administrator. He lived in the county and had administered there upon the estate. At the time of this transaction, the widow was compelled to make her election within twelve months from the death of the testator or intestate. Under the law, therefore, as it then stood, it might have become indispensably necessary to make an election before administrator was appointed or an executor qualified. Consequently, notice to the representative of the estate was not required.

[2.] It is insisted that the administration in Taliaferro county, where the election was made, was void for want of

jurisdiction in the Court to grant it. It is true, that Dr. Calloway resided in another county at the time of his death. And since the Act of 1839, that being the case, administration could not have been granted except in the county where he lived at the time. Before 1839, however, the law had not been settled, and the practice was not uniform. In thousands of instances, the Courts of Ordinary assumed jurisdiction wherever they found assets. And it would not do to set aside all such administrations at this late day. The Court of Ordinary of Taliaferro county, being a Court of general jurisdiction *quo ad* this subject, we are bound to presume in favor of their judgment; and that proof of assets, was made.

[3.] The next main objection urged, is, that the right to this child's part which the widow of Dr. Felix J. Calloway elected to take, was never reduced to possession by Dr. Royston, who intermarried with the widow; and that the same survived, upon her death and his death, to Dr. Calloway's children.

Were this a chose in action, which Dr. Royston had failed to collect in the lifetime of his wife, still the right at her death would have survived to him. But it is land; and the title of the widow, as joint tenant with her children, vested in her husband upon marriage; and in right of his wife and as guardian of the children, he took possession and occupied the land until his death.

It is suggested, that having become guardian of the two minor children of Dr. Calloway, Dr. Royston held the land as trustee for them. But this will not fully explain the possession. For while it is true, that as guardian he occupied two-thirds of it for his wards, this gave him no right to the remaining third; he was in, as husband, upon that third: and he having survived his wife, the land was his; and descended at his death to his heirs, who are the complainants in the bill. What would have been the rights of the wife, had she survived, it is unnecessary to decide;

we suppose, however, nothing more than she acquired in the estate of her former husband—dower or child's part.

[4.] But the main question in this case is, do the pleadings and proof make such a case as will authorize, even much less justify, a sale of this land? After much reflection, we are forced to the conclusion that they do not.

This case was before this Court in July 1853. 13 *Ga. Rep.* 425. It came up, upon judgment upon demurrer. The bill alleged that the land, "was only valuable as a cotton plantation; and that to have the same partitioned into three separate and distinct parcels, would vastly diminish its value and render it of little worth to either of the parties in interest; but that if the tract was sold together, it would bring $25,000 or some other large sum," and the demurrer admitted this statement to be true.

We held that the *bill* made such a case as is contemplated by the Act of 1837 (*Cobb* 583–4) and consequently should not be dismissed upon demurrer. The Court in its opinion, however, goes on to say, "whether upon the hearing, the proof will sustain the allegation is another thing. If upon the trial the complainants should fail to make it satisfactorily to appear by testimony, to the Court and jury, that all things considered, it is best that the plantation should be sold in bulk, rather than be divided, she will fail of course to obtain a decree for a sale."

We are not satisfied that the complainant has made out such a case as would authorise a sale. The entire tract of land is too large to invite a vigorous competition. The bidders would necessarily be few, and in all probability, the result would be that combinations would be formed to subdivide the plantation; and in this way, the interest of the heirs would be sacrificed instead of promoted. Set apart one-third of this land to Cyrus A. Royston and wife, which they insist shall be done, and the remaining two-thirds would certainly be large enough to attract the attention of the most respectable capitalists; and Cyrus A. Royston and wife, are

willing and anxious to risk the depreciation upon their por- tion. They may want it for a home; but after all, these considerations, weighty as they are, are not those which have mainly influenced our deliberations. Dower is a favorite of the law. The Acts of 1841 and 1850, show how cautious our own Legislature has been, not to interfere with this right, forcibly and against the will of the wife, and that too even in cases where there would seem to be an apparent necessity to do so. Her *consent* to take money, in lieu of dower, would seem to be indispensable in all cases. True, the right of Mrs. Cyrus A. Royston is inchoate, still it is not contin- gent; she cannot be deprived of it, neither by the act of her husband nor of the law. To divest her of it, her voluntary relinquishment must be procured. Under these circumstan- ces, we do not feel at liberty in a case of such doubtful pro- priety and expediency as the present, to undertake to control her election, and to say that she shall consent to a sale and unite in a conveyance to the purchaser.

[5.] The law is always reluctant to disturb private rights. It cannot be too much so. It is going quite far enough to seize and appropriate individual property to public purposes, even where *just compensation is made.* It should require a strong case to justify the Courts in going beyond this.

[6.] It may be said that the last section of the act of 1837, demonstrates upon its face, that the Legislature foresaw that there would be recusant parties; and hence the provision to coerce the execution of deeds and other suitable conveyan- ces, in conformity with the decree or order of sale. And this may be true of those who are *sui juris.* But as we have already intimated, neither the husband nor the Courts, nor any other human power, can compel the wife to relin- quish her right of dower, inchoate though it may be, when she is not asking the aid of the Court. Should she become a suitor, seeking the aid of the Court, the case would be quite different.

Again, it may be argued, that a sale of the entire premises

Royston vs. Royston.

may be decreed, subject to dower. How can such a decree be executed? Mrs. Cyrus A. Royston is only entitled to dower in the one-third part of this land, belonging to her husband. Unless this one-third part be partitioned off, how can dower be carried out of the whole tract, in the event of her surviving her husband? And were this practicable, would not this cloud or incumbrance over the title of the purchaser, depreciate its marketable value?

As to the injury which would result to the heirs of Dr. Royston by a further subdivision of their third into three parts, that is a matter which cannot affect the present issue. That contingency can be prevented by a sale of that entire third, or by uniting the two-thirds, as hereinbefore suggested. Swain and wife are willing to a sale; and for the reason just given, the testimony of Eubanks Tompkins was improper, for irrelevancy, and should have been rejected.

[7.] We see no error in the refusal by the Court to allow defendant's counsel to ask the juror, John M. Cochran, whether he had not formed and expressed the opinion, that it was better to sell the land than divide it.

[8.] We think that the mode of qualifying Edward J. Swain to his answer was irregular, if not unauthorized. It should have been sworn to before some judicial officer of the State, or some one authorized by the laws of Georgia, or by act of Congress, to administer the oath out of the State.

Mrs. Swain's answer may have been sufficient to bind her, it could affect nobody else.

We are of the opinion, that Mrs. Mary Frances Royston, was not made a party to the bill, nor could she be prejudiced in any way by the proceeding.

It follows from the general view which we have already taken that there was error in the 7th, 8th and 9th, given by the Court to the jury, as set forth in the bill of exceptions.

[9.] As to the objection that the land is situated in different counties, we see nothing in that. The litigation does not contravene that provision of the Constitution which re-

quires titles to land to be tried in the county where the land lies. For while it is true to some extent, that the title is involved; still it is incidental only to the main controversy, and the Constitution manifestly refers to cases brought for the purpose of trying the title.

Upon the whole, our judgment is, that the cause should be remanded, with permission to the complainants to amend the prayer of the bill, so as to authorize a decree for the division of the land into three equal parts, one to be assigned to the heirs of George D. Royston, deceased, one to Swain and wife, and the other third to Cyrus A. Royston and wife.

Judgment reversed.