THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *et al.* v. ALBERT L. WYNKOOP *et al.*

No. 14,524.    (85 Pac. 595.)

SYLLABUS BY THE COURT.

1. INJUNCTION — *Closing of a Railway-crossing — Jurisdiction.* A suit of injunction to prevent the closing of an undergrade crossing of a railroad operates *in personam,* and is not one of those provided for in section 46 of the civil code (Gen. Stat. 1901, § 4476) which must be brought in the county in which the subject of the action is situated.

2. RAILROADS—*Contract with Landowner for Right of Way—Reservation.* A contract between the owner of land and a railroad company, in connection with a proceeding to condemn a right of way for a railroad, which reserved to the landowner an undergrade crossing as a means of access from one part of the farm to the other, and which was taken into account by the condemnation commissioners in the award of damages for the appropriation of the right of way, is binding upon both of the parties.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed May 12, 1906. Affirmed.

*M. A. Low, W. F. Evans,* and *Paul E. Walker,* for plaintiffs in error.

*C. D. Walker,* and *J. L. Berry,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:    This was a suit to enjoin the closing of an undergrade farm-crossing of a railroad. In 1886 the Chicago, Kansas & Nebraska Railway Company laid out a railroad and condemned a right of way across the farm of David Wynkoop.   The route selected was between the buildings on the Wynkoop farm and the public highway.   In a depression which extended from the buildings to the public highway a private roadway had been built for the accommodation of the owner and occupants of the farm.   The railroad was laid out and built across this depression, and the plan of the railroad required a high embankment which extended eighty-five rods across the farm, the height of which was about twenty-five feet at the intersection of the private roadway.   When the commissioners met to condemn a right of way over the farm the matter of passing from one side of the railroad to the other by the use of the private roadway was considered, and it was agreed between the owner and the representative of the railway company that an opening should be left for an undergrade crossing at the intersection of the private roadway; and the damages of the owner were assessed by the commissioners upon the understanding that he should have such a crossing at that point.   The railroad was built in accordance with the plan, and a bridge constructed over the private roadway.

In 1891 defendant corporation acquired the railroad property, and in 1895 some negotiations were had between the railway company and the owner of the farm in regard to the narrowing of the passageway under the railroad and the substitution of an arch stone culvert for the bridge first built.   No agreement was reached by them, however, and another bridge similar to the one first built was erected without interfering with the private roadway.   In 1903 the railroad com-

pany, desiring to improve its road-bed and to put it in a condition for the use of heavier equipment, again negotiated with Wynkoop with reference to placing a stone culvert where the private roadway crossed under the railroad-track. At that time the representative of the railway company suggested the substitution of a stone culvert about ten feet wide, while Wynkoop insisted that the necessities of the farm required an opening fourteen feet wide. There was a suggestion, too, by the railway company that a grade crossing might be made at the end of the embankment, but the parties were unable to agree, and the company proceeded to close up the roadway, when this suit was brought, which resulted in a permanent injunction against the destruction of the undergrade crossing.

It is first contended that as the *situs* of the undergrade crossing is in Doniphan county the district court of Atchison county was without jurisdiction to consider the case; that the provision of section 46 of the civil code (Gen. Stat. 1901, § 4476) requiring that actions "for the recovery of real property or of any estate or interest therein, or for the determination in any form of any such right or interest," must be brought in the county in which the subject of the action is situated applies. This is not an action to recover real property, nor for the determination of an interest therein. It is a suit which operates *in personam*, and its object is to prevent the commission of a wrong by obstructing a roadway. Wynkoop was not asking to have an interest in land determined, nor could any judgment be rendered in the suit which would have that effect. The legal title to the land was in himself, and ever since the right of way for the railroad was condemned and the railroad was built there has been an undergrade crossing from one part of his farm to the other. The proposed closing of this roadway is the wrong of which complaint is made. In establishing the wrong the ownership of the land, as

well as the condemnation of a right of way over it, was to some extent drawn in question; but these matters were only incidental to the gravamen of the suit —the prevention of a threatened wrong.

Not every action growing out of transactions concerning real property is local. Where the decree sought is to operate on the person, and not upon the real property, the location of the property indirectly affected is not material. It was held in *Close v. Wheaton,* 65 Kan. 830, 70 Pac. 891, that a suit to compel the specific performance of an agreement to convey land did not come within the provisions of section 46 of the civil code (Gen. Stat. 1901, § 4476), and that while it related to real estate it could be brought in any county where the defendant might be legally served with personal process. In *Massie v. Watts,* 10 U. S. 148, 3 L. Ed. 181, Chief Justice Marshall, speaking of such a suit, said:

"In a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree." (Page 160.)

It is held that jurisdiction of this character is strictly *in personam,* and that the court may exercise it independently of the locality where the act is to be done. The relief sought not being the determination of an interest in real estate but against the defendant personally, suit was rightly brought where personal service could be had. As tending to sustain this view, see: *Alexander v. Tolleston Club,* 110 Ill. 65; *Powell v. Cheshire,* 70 Ga. 357, 48 Am. Rep. 572; *Great Falls Manufacturing Company v. Worster,* 23 N. H. 462; *Clad et al., Appellants, v. Paist,* 181 Pa. St. 148, 37 Atl. 194; *Jennings Bros. & Co., Appellants, v. Beale,* 158 Pa. St. 283, 27 Atl. 948; *O'Connor v. Shannon* (Tex. Civ. App.), 30 S. W. 1096; *Roche v. Marvin et al.,* 92 N. Y. 398; *Rose et al. v. Schoteau,* 11 Ill. 167; *Roys-*

38—73 KAN.

*ton v. Royston,* 21 Ga. 161; *McArthur & Griffin v. Matthewson & Butler,* 67 Ga. 134; 11 A. & E. Encycl. of L. 173.

There is a contention that under the evidence Wynkoop was not entitled to an undergrade crossing. In that connection it is argued that the right of Wynkoop to use the crossing is in the nature of an easement, and that it is worthless unless evidenced by writing. The case is not to be treated as an easement obtained by Wynkoop from the railroad company. The private roadway passed over his own land, and he never parted with the right to it or to its use. The company acquired no more than it paid for, and according to the testimony the open passageway was excepted from the right of way, and that fact was taken into account in the allowance of damages by the commissioners. If the right to make a solid embankment had been sought and obtained, an award of damages for the obstruction and the resulting inconvenience of the owner in passing from one part of his farm to the other must have been allowed. The question whether the undergrade crossing was practicable and should be maintained was a proper consideration in the condemnation proceeding. If such a crossing is a part of the plan of the railroad company, and it is considered in awarding damages to the landowner, the company is bound to construct and maintain such crossing. (*K. C. & E. Rld. Co. v. Kregelo,* 32 Kan. 608, 5 Pac. 15; *C. K. & W. Rld. Co. v. Cosper,* 42 Kan. 561, 22 Pac. 634; *Railway Co. v. Davenport,* 65 Kan. 206, 69 Pac. 195; 15 Cyc. 717.)

A contract reserving a crossing which diminishes the damages to be paid by the railroad company surely has a binding effect upon such company. The crossing was maintained by the railroad company, and used by the landowner, about seventeen years, without interruption, before this controversy arose; but the right to the crossing does not depend upon inferences based

on the conduct of the parties, nor yet upon the necessity for the crossing, but rests upon an agreement reserving it to the owner, and largely affecting the compensation paid for the right of way. The landowner cannot insist that the opening shall remain in the same form, nor as wide as it was originally left, but under the agreement is entitled to such an undergrade crossing as will meet the ordinary necessities of a farm. The fact that the parties were unable to agree just what should be the width of the crossing did not abrogate the original agreement, nor warrant the closing of the crossing.

There appears to be substantial support in the evidence for the findings of the court, and hence its judgment is affirmed.

All the Justices concurring.