## H. B. STONE v. THE MISSOURI PACIFIC RAILWAY COMPANY.

No. 14,464   (90 Pac. 251.)

### SYLLABUS BY THE COURT.

1. JUDGMENTS—*Res Judicata—Evidence of the Scope of the Judgment.* A question as to what rights have been acquired by condemnation proceedings which include the trial of an appeal from the award made by commissioners depends upon what was in fact adjudicated in such trial, and this may be determined by the rules governing such an inquiry with respect to an ordinary judgment. The record may not be contradicted, but so far as is consistent with it—with respect to matters concerning which it is silent—other evidence, including parol testimony, may be received to show what was involved, considered and established.

2. INJUNCTION—*Closing Undergrade Farm Crossing—Elements of Damage Considered in Condemnation Award.* Although the report of the condemnation commissioners, the pleadings on appeal, the verdict and judgment may all be silent upon the subject, the owner of land across which a railroad right of way has been condemned may show by other evidence that with the approval of both parties the question submitted to and determined by the jury was the amount of his damages upon the supposition that an undergrade farm crossing then constructed was to be kept permanently open for his benefit, and upon such showing he is entitled to an injunction restraining the railroad company from obstructing such crossing.

3. —— *Prima Facie Proof that Crossing Was to be Maintained Permanently.* Evidence that during the pendency of such an appeal the railroad company asked a continuance, and in support of such application presented an affidavit alleging among other things the existence of an agreement

for the maintenance of such undergrade crossing, and that at the trial all of the testimony offered in behalf of the company as to the amount of damages was expressly based upon the supposition that such crossing was to be maintained permanently, coupled with the fact that the jury in answer to a special question stated that they allowed nothing for inconvenience of use resulting from the land's being cut in two by the railroad, is sufficient to make a *prima facie* case in support of a right to enjoin the railroad company from obstructing such crossing.

4. EVIDENCE—*Affidavit Presumed to Have Been Rightfully Filed.* An affidavit purporting to be made in support of a motion for a continuance, which was filed a few days before a continuance was granted on the application of the party in whose behalf it professes to be made, in the absence of some reason to the contrary will be presumed to have been filed by authority of such party.

Error from Coffey district court; DENNIS MADDEN, judge. Opinion filed May 11, 1907. Reversed.

*J. D. Frazier,* and *W. W. Brown,* for plaintiff in error.

*Waggener, Doster & Orr,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: In 1887 the Interstate Railroad Company acquired by condemnation a right of way across a farm owned by H. B. Stone. When the road was built a trestle bridge was put in over a low place, leaving an opening connecting the two portions into which the tract was divided. This opening was used for an undergrade farm crossing until 1901, when the Missouri Pacific Railway Company, the successor of the Interstate Railroad Company, sought to replace the bridge by an embankment. Stone brought a suit to enjoin the filling up of the passage, claiming that prior to the condemnation proceedings an agreement had been made with him by the agent of the railroad company that it should be kept open perpetually for his benefit, and that the damages awarded and paid were estimated in view of this arrangement. Upon

a hearing on the merits he was defeated, and he now prosecutes error.

Considerable oral testimony was given in behalf of the plaintiff. This must be disregarded here, inasmuch as it does not appear what credence the trial court gave it, no findings of fact having been made. We think, however, that the uncontradicted written evidence required the granting of the injunction.

The defendant maintains that the suit is in effect one to enforce an agreement for an interest in real estate, and must fail because of the lack of any written memorandum of such agreement sufficient to satisfy the statute of frauds. The plaintiff's claim, however, is that the railroad company never acquired the right to construct an embankment at the place in question; that what it obtained by the condemnation proceedings, and what it paid for, was the privilege of constructing its road in such a way as not to interfere with the plaintiff's free passage back and forth at this point. The question is not what the company gave, but what it received. The court was not called upon to inquire whether an oral contract had been made which could be enforced, but to determine the effect of the condemnation proceedings. The express agreement to maintain the passage is of importance only as it may serve to interpret the award of damages. So far as relates to the statute of frauds the case is controlled by *Railway Co. v. Wynkoop,* 73 Kan. 590, 85 Pac. 595. There the landowner was held to be entitled to an injunction under similar circumstances, although the same objection was made. The scope and ground of the decision appears from this excerpt from the opinion:

"There is a contention that under the evidence Wynkoop was not entitled to an undergrade crossing. In that connection it is argued that the right of Wynkoop to use the crossing is in the nature of an easement, and that it is worthless unless evidenced by writing. The case is not to be treated as an easement obtained by Wynkoop from the railroad company. The private roadway passed over his own land, and

he never parted with the right to it or to its use. The company acquired no more than it paid for, and according to the testimony the open passageway was excepted from the right of way, and that fact was taken into account in the allowance of damages by the commissioners. If the right to make a solid embankment had been sought and obtained, an award of damages for the obstruction and the resulting inconvenience of the owner in passing from one part of his farm to the other must have been allowed. The question whether the undergrade crossing was practicable and should be maintained was a proper consideration in the condemnation proceeding. If such a crossing is a part of the plan of the railroad company, and it is considered in awarding damages to the landowner, the company is bound to construct and maintain such crossing." (Page 594.)

The only material difference between that case and this is that there the report of the right-of-way commissioners was acquiesced in, while here it was appealed from. There the rights of the parties were fixed by the report; here they were fixed by the verdict of the jury. There the question was, What damages were covered by the award? Here it is, What matters were concluded by the judgment? In the present case the commissioners in their report made no reference to a reservation of a subway. They assessed the damages to the plaintiff's tract at $462.40, of which $212.40 represented the value of the land taken. The plaintiff appealed, and in the district court the jury increased the total to $1000, which was duly paid. The question to be decided is, What rights did the railroad company acquire by this payment? And this turns upon the further question, What were the rights to be yielded by the landowner the value of which the court and jury fixed at $1000? This is in substance a question of what was adjudicated in that litigation, to be determined in the same way as any other question of former adjudication. (*A. & N. R. Co. v. Boerner*, 34 Neb. 240, 51 N. W. 842, 33 Am. St. Rep. 637.) The record is of course first to be

looked to, and is decisive so far as it speaks. It may not be contradicted. But so far as is consistent with the record—with respect to matters concerning which it is silent, other evidence, including parol testimony, may be received to show what was in fact involved, considered and established. (2 Van Fleet's For. Adjud. § 413; 24 A. & E. Encycl. of L. 835, 193-195.)

The pleadings in the case heard on appeal were lost, but it was agreed that nothing was said in them regarding an undergrade passage; the verdict and judgment were likewise silent on the subject. If any map or profile prepared by the railroad company in connection with the condemnation proceedings had shown an undergrade crossing at this point, or if the report of the commissioners had indicated one, there would of course be no difficulty in arriving at the conclusion that the award of damages was made upon the basis of such a reservation in behalf of the landowner. In the absence of any such showing the presumption no doubt is against any limitation on the method of construction to be adopted, but the presumption is not conclusive, for there is no imperative requirement that such matters should be so indicated. As was said in *Packard v. Bergen Neck Ry. Co.*, 54 N. J. Law, 553, 25 Atl. 506:

"It is to be regretted . . . that the law does not require the party condemning lands for public use to set out in the proceedings the mode in which the land condemned is to be used, so that it will become matter of record. The condemning party may designate the mode of use in its petition for the appointment of commissioners, and if it does the award should include damages predicated upon the use of the land in the designated mode. If the mode is not designated in the petition or when called on before the commissioners or jury, then the award should include damages predicated upon the use of the land in any lawful mode for the purposes of the party. *National Docks, &c., Co. v. United &c., Cos.*, 24 Vroom. 217, 21 Atl. 570, 26 Am. St. Rep. 421. And if, when called upon to declare before the commissioners or jury the mode in which the land is to be used, the party announces

its plan, the award may be made on the basis of the most injurious use within such plan, and equity will restrain from a more injurious use. *Carpenter v. E. & A. R. R. Co.,* 9 C. E. Gr. 249. When a plan for the use of the condemned land is announced upon the trial of an appeal, the trial judge may properly require it to be entered upon the record by amendment of the issue or otherwise." (Page 563.)

A paragraph of the syllabus in the case last cited reads:

"Where, at the time of making an award for damages for lands taken by a railroad company, the representatives of the company stated to the commissioners that they would cross certain low lands by an iron bridge, resting upon posts, and would protect and keep clear a lane—the only convenient means of communication between different parts of a farm—but subsequently the company determined to construct a high embankment and have commenced it, and intend to fill in and cut off the lane entirely, it clearly appearing that the commissioners did not consider the embankment in the estimate of damages, equity will restrain the company from filling up the lane until compensation is made to the owner of the lands." (*Carpenter v. Easton and Amboy R. R. Co.,* 24 N. J. Eq. 249.)

In *DuPont v. Sanitary District,* 203 Ill. 170, 67 N. E. 815, it was said that a stipulation filed by the plaintiff in an action for the condemnation of a right of way and providing that the intended improvements should be made according to a specified method would not protect the defendant unless incorporated in the pleadings or judgment or otherwise made a matter of record. The question arose, however, upon a review of the instructions given by the trial court, and the means for determining the effect of a judgment were not discussed. The record in any case ought of course to show affirmatively what was litigated. But an omission in this respect in a right-of-way case is no more significant than in any other. Indeed it should be thought less so under our statute, by reason of the fact that no formal pleadings are required. In the

present instance the record was not so specific as to cut off all inquiry into the effect of the judgment. It was merely negative. It did not show that a right of passage beneath the track was reserved to the plaintiff, and it did not conclusively show the contrary; it left him free to establish that fact later if he could do so by competent evidence. Whether he succeeded in doing so is the question to be decided.

On the trial of the injunction suit the plaintiff introduced in evidence an affidavit which had been filed in the right-of-way case. It purported to be a verified showing in behalf of the railroad company in support of a motion for a continuance. It was not authenticated by the signature of an attorney, but the fact (which was shown by the record) that a week after it was filed the company's motion for a continuance was granted seems to warrant the belief, in the absence of any countervailing reason, that it was used or prepared as evidence, or at all events was filed by authority of the company. It is not to be presumed that such a document would have found its way into the official custody of the clerk of the court as a paper in the case except by the act of the party in whose interest it professed to speak. The affidavit reads:

"U. W. Weston on oath says that he is manager of the construction company constructing the Interstate railroad, and also right-of-way commissioner. After the right of way for said railroad had been duly condemned and appropriated for said road and said road had been graded through the plaintiff's farm affiant says that he saw plaintiff with a view of adjusting his claim of damages against said company; that said plaintiff told this affiant that if his company would construct for him an underway passage under their railroad track, so as to give him easy passage from one part to the other of his farm divided by said road, it would greatly reduce the amount of his damages. Affiant says that his company agreed to construct said passageway under said road at a point designated by said plaintiff, and have already pursuant to said agreement expended about $200 in the construction of

said underground crossing. Affiant says that owing
to the short space of time in which said company had
to complete their road to Gridley it was expressly
stipulated as a part of said agreement with said plain-
tiff and this affiant for said company that said com-
pany were not required to complete said crossing until
the completion of said road to Gridley. Affiant further
says that it was agreed at said time that the question
of damages to plaintiff on account of said road pass-
ing through his said farm was to be held in abeyance
until the said crossing was completed, and then if
said plaintiff and said company could not agree upon
the amount of damages to be paid by said company
the case now pending in court on appeal from the
award of the commissioners appointed to condemn
the right of way should be tried. Affiant says that
they have not yet completed said road to Gridley, and
have not completed said crossing, and that relying on
said agreement of said plaintiff have, made no prepa-
ration for the trial of this cause and cannot safely
at this time go to trial therein, and are now completely
taken by surprise in said plaintiff at this time insist-
ing upon a trial of this action."

The allegations of fact set out in the affidavit may
not be binding upon the Interstate Railroad Company,
or upon its successor, the defendant here, but the pres-
ence of the document in the files is some evidence that
pending the trial of the appeal from the commission-
ers' award the company acted upon the theory that
the question to be determined in that proceeding was
the amount of the plaintiff's damages on the supposi-
tion that the undergrade passage then left was to re-
main open permanently. Moreover, the plaintiff in-
troduced in the injunction suit a transcript of the
entire evidence given in behalf of the railroad com-
pany in the right-of-way case. This transcript was
incorporated in the deposition of the official stenog-
rapher, and being uncontradicted in any way must
be accepted as accurate. It shows that the company's
witnesses, under the directions of the company's at-
torneys, gave their opinion as to the amount of damage
resulting to the plaintiff from the taking of his land

explicitly assuming the existence and maintenance of the subway. Their testimony was manifestly directed to that issue, and no other. This clearly shows the attitude of the railroad company at that time. Moreover, it is plain from the cross-examination of these witnesses that there was no difference between the parties as to what was involved—each side proceeded upon the theory that the damages were to be estimated on the hypothesis that the opening left under the track should not be closed. That the jury so understood the matter is evidenced by the fact that in answer to a special question they stated that they allowed no damages on account of the inconvenience in the use of the plaintiff's farm. In view of the matters already mentioned this answer can hardly be interpreted otherwise than as an indication that the jury regarded the crossing below grade as doing away entirely with one of the most obvious elements of damage where a farm is cut in two by a railroad—the necessity of passing over the track in getting from one side to the other.

We think the uncontradicted evidence, excluding that given orally, established the fact that the right acquired by the railroad company to operate its line across the plaintiff's farm was subject to his right of passage by means of the opening left when the road was built, and that the injunction against its obstruction should have been granted.

The judgment is reversed and the cause remanded for a new trial.