No. 39,929

JOE WILSON and MAUDE LEE WILSON, *Appellants,* v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, *Appellee.*

(292 P. 2d 725)

Opinion filed January 28, 1956.

*Bernard V. Borst* and *D. Clifford Allison,* both of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Keith Eales, Cliff W. Ratner, William A. Fry, A. Wayne Murphy, Ray A. Overpeck* and *H. K. Greenleaf, Jr.,* all of Wichita, were with them on the briefs for the appellants.

*Henry V. Gott,* of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, George Stallwitz, Ralph M. Hope, Richard W. Stavely* and *Charles S. Lindberg,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action for temporary damages sustained by plaintiffs as a result of defendant railroad's closing of a cattle crossing under its railroad on plaintiffs' farm, and to compel defendant to restore the underpass or to construct a farm crossing over the railroad.

Defendant's demurrer to the second amended petition was sustained, and plaintiffs have appealed.

Following allegations of plaintiffs' ownership of the described quarter section of land in Labette County, the second amended petition (hereinafter referred to as petition) alleges:

"About 1879, the defendant or its predecessor, by and through the power of eminent domain, acquired a right-of-way through the above described land now owned by plaintiffs and constructed a grade thereupon, excepting a portion thereof where a bridge or underpass was constructed, commonly known as Bridge F-374.4, which upon construction continued to give plaintiffs and their predecessors in title freedom of access to and from the parcel of their land bisected by the grade construction, and no serious damage resulted to plaintiffs and their predecessors in title by virtue thereof.

"Though defendant and/or its predecessors acquired right by eminent domain to construct the grade on its said right-of-way in the manner described, it did not, at any time, acquire any right to that portion of plaintiffs' land over which said bridge or underpass was situated; nor have defendants or their predecessors acquired any right since 1879 to remove said bridge or underpass in such a manner as to close, fill, or otherwise make impossible the passage of plaintiffs' livestock to and from the bisected north and south portions of plaintiffs' farm.

"From the time said railroad bridge was constructed, a wing fence existed which led from the pasture located on the north side of said grade to property on the south side of said grade and said opening and underpass under said bridge remained in use from its construction in about 1879 until approximately the latter portion of April, 1952, the exact date being unknown to plaintiff. During all of said period of time livestock could, by means of said underpass, go from one side of said farm to the other and obtain necessary water, shade, feed and shelter. In the latter part of April, 1952, the defendant, or its agents, or employees, tore down said wing fences leading to the openings of said underpass, fenced off said underpass and completely filled said underpass, except for a tin whistle or opening of approximately three feet in diameter, which is wholly inadequate for the passage of plaintiffs or their livestock between said north and south portions of said farm, and the filling of said underpass has, for all practical purposes, entirely blocked, obstructed and shut off plaintiffs' right of ingress and egress to said north and south portions of said farm."

It is then alleged that as a direct result of the foregoing acts plaintiffs have had to spend additional time in caring for their livestock; that they are unable to make maximum use of their farm; that they have had to use additional grazing land located elsewhere for their cattle; that by reason of a lack of a source of water on the northern portion of the farm the same is practically useless as pasture land and will remain so as long as the underpass is obstructed, and that as a result of such obstruction the land has no

value for general farming purposes or for cultivated crops. Further, that as a direct result of such obstruction plaintiffs had, during the two years preceding the filing of their petition, been damaged to the amount of $2,494.65.

In count two of the petition plaintiffs seek to invoke the provisions of G. S. 1949, 66-301 and 303 (hereinafter mentioned), and pray for an order compelling defendant to reopen and maintain the underpass, or, in the alternative, to construct and maintain a crossing thereon over or under the railroad track at some convenient place on plaintiffs' property.

Defendant's demurrer was on the ground the petition does not state facts sufficient to constitute a cause of action against defendant and in favor of plaintiffs.

Plaintiffs contend their petition alleges that the right of way acquired by defendant was a mere easement; that they and their predecessors retained the fee therein subject only to the use of the land by defendant for the purpose for which it was condemned; that defendant never acquired a right by condemnation or otherwise to utilize the land under the bridge or to obstruct the under-grade crossing; that plaintiffs and their predecessors never parted with title to the land under the bridge, and that defendant may not now impose a new burden upon their land without payment of compensation. Further, it is contended that it may be inferred that the original easement obtained in the condemnation proceeding back in 1879 contemplated a reservation to plaintiffs' predecessors in title of a right of way across or under defendant's roadbed and tracks, and that, all of the foregoing allegations being considered as true, for purposes of the demurrer, they have stated a cause of action.

In approaching the question presented it is necessary to keep in mind the elementary rule that a presumption of validity and regularity attaches to all judicial proceedings until the contrary is shown. This presumption applies equally to a condemnation proceeding. (*L. N. & S. Rly. Co. v. Meyer*, 50 Kan. 25, 32, 31 Pac. 700; *C. K. & W. Rld. Co. v. Sheldon*, 53 Kan, 169, 35 Pac. 1105.) Article 12, § 4, of our Constitution provides:

"No right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money, or secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation."

In other words, when defendant or its predecessor acquired the right of way through the land in question in 1879, it is presumed that it paid full compensation for it. Having paid full compensation, defendant, in the absence of an agreement or reservation to the contrary, would be under no obligation to maintain at its own expense the bridge or underpass in question in perpetuity. It may be assumed that the petition, being the third such pleading to be filed by plaintiffs, contains all available facts and information on the question, and nowhere is it alleged that defendant or its predecessor agreed to build and maintain the underpass, or that the building and maintenance of such was taken into consideration in the assessment of damages in the condemnation proceeding in 1879.

It is true the petition alleges that although the railroad acquired the right of way by eminent domain it did not acquire any right to the portion over which the bridge was built. In other words, it is alleged the right acquired *excepted* the portion of the land where the bridge or underpass was constructed, the inference, of course, being that plaintiffs now own that particular portion of the land, and that they have a statutory right to compel the continued maintenance of the underpass or crossing.

In contending that such allegation of ownership is admitted by the demurrer we believe plaintiffs are in error. It is an elementary rule of construction that a demurrer admits only facts well pleaded and not mere naked conclusions. A general allegation of title and ownership constitutes merely a conclusion of the pleader and is not admitted by a demurrer. (*Richards v. Tiernan,* 150 Kan. 116, 91 P. 2d 22; *Preston v. Shields,* 159 Kan. 575, 156 P. 2d 543; *State, ex rel., v. Ancient Order of United Workmen,* 178 Kan. 69, 76, 283 P. 2d 461.) As far as this phase of the case is concerned, we find a total lack of *facts* showing ownership of the particular portion of land in plaintiffs, as well as a total lack of anything in the nature of an agreement on the part of defendant or its predecessor to maintain the underpass or crossing. In *In re Estate of Kerschen,* 176 Kan. 226, 269 P. 2d 1033, it was said that when a plaintiff's cause of action is predicated upon a fact essential to his recovery that fact must be pleaded as well as proved.

In support of their position with respect to the nature of an easement for a right of way, plaintiffs call our attention to a number of early decisions of this court as having a bearing on the question,

among them being *K. C. Rly. Co. v. Allen,* 22 Kan.. 285, 31 Am. Rep. 190. We have examined this and other decisions, but in our opinion they are not decisive on the question presented. Reference is made, however, to *Railway Co. v. Wynkoop,* 73 Kan. 590, 85 Pac. 595, and to *Stone v. Railway Co.,* 75 Kan. 600, 90 Pac. 251. We do not quote from the two last-mentioned cases, but note the fact that in each of them an *agreement* was involved and taken into consideration in the assessment of damages in condemnation. Nothing of that nature is pleaded in the case before us. As to count one of the petition the demurrer was properly sustained.

We turn now to count two in which plaintiffs seek to invoke the provisions of G. S. 1949, 66-301 and 303, and to compel defendant to reopen and maintain the underpass, or, in the alternative, to construct and maintain an underpass or crossing at some convenient place on plaintiffs' property.

These sections of our statutes were enacted in 1911. 66-301 provides that whenever any railroad shall run through any farm so as to divide it, such railroad, at the request of the owner, shall construct and maintain a crossing over or under the railroad track at some convenient place so as to permit ready and free crossing by animals, farm implements and vehicles. 66-303 provides that if upon such request for a crossing being made the railroad shall fail, neglect or refuse to construct one or to keep it in repair, then the landowner may by appropriate action compel the railroad to construct and maintain the same, or the owner may construct such crossing and then collect from the railroad the cost thereof.

Plaintiffs inferentially, if not directly, concede that this count of their petition seeks to invoke a remedy which is unavailable, under the authority of *Chamberlain v. Railway Co.,* 107 Kan. 341, 191 Pac. 261, 12 A. L. R. 224, but contend their petition alleges facts showing the existence of a nuisance, and that they are entitled to injunctive relief to compel the defendant to reopen the underpass which had been wrongfully closed.

The Chamberlain case was an action to compel the defendant to construct, at its own expense, a private crossing over its track and right of way which ran through plaintiff's farm. The law of the case is well stated in the syllabus, which reads:

"Where a railway company acquired a right of way across a farm in 1885, and at that time paid the owner the full compensation for all the damages, matured, continuing and prospective, which he thereby sustained, the railway

company cannot be compelled, under a statute enacted many years later, to furnish a crossing over the railway and to construct it at its own expense to connect the two parts of the farm divided by the railway, since such an application of the after-enacted statute would deprive the railway company of its property without compensation, and deny to it that equal protection of the law which is guaranteed by both the state and federal constitutions." (Syl.)

This rule was followed in the recent case of *Strauss v. Missouri Pacific Rld. Co.*, 175 Kan. 98, 259 P. 2d 145, in which it was held:

"Where a railroad company obtained by warranty deed a fee simple title to land for a right of way over a farm in 1886 and the grantors reserved no easement for a crossing over the railroad and the grantee did not agree to furnish such a crossing at its own expense for the use and benefit of the grantors, the railroad company is not compelled by virtue of G. S. 1949, 66-301, enacted in 1911, to furnish a crossing to connect the two parts of the farm." (Syl. 1.)

In addition, it was held that a mere permissive use of a private crossing voluntarily furnished by a railroad company for the accommodation of a landowner did not ripen into an implied agreement so as to compel the company to maintain and repair the crossing.

Under the rule announced in the two last-mentioned decisions count two of the petition clearly does not state a cause of action.

And, while the point is not argued by the parties, we think the petition clearly was demurrable for another reason. Assuming, solely for the sake of argument, that all allegations are well pleaded, and that everything plaintiffs state is true, the result would be that plaintiffs own the particular portion of ground where the underpass was located. That being so, the closing thereof by defendant would constitute a trespass upon their property and an injury to their rights. G. S. 1949, 60-306, Third, provides that an action for trespass upon real property, or an action for injury to the rights of another, not arising on contract, can only be brought within two years after the cause of action shall have accrued. (See also *Pever v. Railway Co.*, 100 Kan. 266, 164 Pac. 159; *McMullen v. Jennings*, 141 Kan. 420, 41 P. 2d 753, and *Hughes v. Marathon Oil Co.*, 142 Kan. 570, 50 P. 2d 937.) It is specifically alleged that the underpass was closed in April, 1952. This action was not commenced until August 7, 1954.

For the reasons stated we are of the opinion that the second amended petition fails to state a cause of action, and the order of the trial court in sustaining the demurrer thereto is affirmed.